## GALLIHER *v.* CADWELL.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF WASHINGTON.

No. 265. Argued April 1, 1892. — Decided May 16, 1892.

Laches does not, like limitation, grow out of the mere passage of time; but it is founded upon the inequity of permitting the claim to be enforced — an inequity founded upon some change in the condition or relations of the property or the parties.

G. made a homestead entry in Washington Territory in 1872. He died in 1873. The entry was cancelled in 1879 for want of final proof within the seven years. In 1880 the act of June 15, 1880, was passed, 21 Stat. 236, c. 227, authorizing persons who had made homestead entries to entitle themselves to the lands on paying the government price therefor. G.'s widow made application for a patent under this act, and her application was rejected. In 1881 W. entered the tract, and in 1882 received a patent for it. In 1884 the widow made an application for a rehearing under the act of 1880, and her application was rejected in the same year. The land having greatly increased in value by the growth of the city of Tacoma, C., claiming through conveyances from W., filed a bill to quiet title, making the widow a defendant. The widow answered setting up as a prior right the homestead entry. *Held,*

(1) That it was doubtful whether the widow of G. was entitled to the benefit of the act of June 15, 1880: but that, without deciding that question,

(2) In view of the rapid and enormous increase in value of the tract, and her knowledge of all the circumstances; which must be assumed from her near residence to the property, a court of equity would not disturb a title legally perfect, created by the General Government after a decision adverse to any reservation of the homestead right, and on the faith of which costly improvements had been made.

THE court stated the case as follows:

On March 1, 1886, appellee, claiming to be the owner of what is known as Votaw's addition to the city of Tacoma, in the then Territory of Washington, filed her bill in the District Court to quiet her title to such property, making, with several others, as a defendant the present appellant. Such appellant answered, alleging a right prior and superior to that of appellee. Appellee's title was derived by regular conveyances from Francis B. H. Wing, who, on December 20, 1881, entered this land, and on April 20, 1882, received a patent therefor from the United States. Her legal title was, therefore, perfect, and the single question presented was, whether appellant had an equity superior to that legal title. In appellant's behalf these general facts appeared: On August 10, 1872, Silas Galliher, her husband, made a homestead entry of the tract. He died April 18, 1873, and his entry was cancelled December 4, 1879, for want of final proof within the statutory period of seven years. On June 15, 1880, an act was passed by Congress of which the following is the second section:

"SEC. 2. That persons who have heretofore, under any of the homestead laws, entered lands properly subject to such entry, or persons to whom the right of those having so entered for homesteads may have been attempted to be transferred by *bona fide* instrument in writing, may entitle themselves to said lands by paying the government price therefor, and in no case less than one dollar and twenty-five cents per acre, and the amount heretofore paid the government upon said lands shall be taken as part payment of said price: *Provided*, This shall in no wise interfere with the rights or claims of others who may have subsequently entered such lands under the homestead laws." 21 Stat. 236, 237, c. 227.

On November 23, 1880, Mrs. Galliher made application for the land under this act. On June 1, 1881, her application was rejected by the Secretary of the Interior. On June 6, 1884, she petitioned for a rehearing, which, on June 20, 1884, was denied. No other action was taken by her to establish or assert any rights until, in response to the bill in this case, she

filed her answer. Upon the proofs the trial court rendered a decree in favor of the appellee, which was sustained by the Supreme Court of the Territory. From such decision appellant brought her appeal to this court.

*Mr. John B. Allen* for appellant.

It is charged that appellant has slept upon her rights and is therefore estopped from asserting them. No statutory limitation has been asserted.

It is not alleged either in the complaint or reply that appellee was a purchaser in good faith without notice, but it is expressly alleged that she, and all persons under whom she claims, before the purchase of the land, were fully advised of the entry of Galliher, of the offer of the widow to acquire the land under the act of June 15, 1880, and that their purchase was made with definite knowledge of the fact that the land in dispute was subject to the homestead entry.

The government held it out to any one who might see fit thus to enter it as such land. It is conceded Silas Galliher was a person duly qualified to make such entry. It is conceded he made the entry in all respects conformably to law, and paid the requisite government fees. This makes a *prima facie* case. Fraud is not to be presumed; much less is perjury. Neither are to be established by mere implication, but must be affirmatively and clearly proven.

If it cannot be thus shown that Galliher was guilty of perjury and fraud in making his entry, no subsequent failure to comply with the law or abandonment of the claim can affect appellant if the construction she claims for the statute be correct.

*Mr. Joseph W. Robinson* filed a brief for appellant.

*Mr. John H. Mitchell* for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

There is a question in this case worthy of consideration, as to whether the homestead entry by the husband of appellant

was made in good faith, or simply for speculative purposes. It is also a question of doubt whether, the homestead right not having been perfected within the time prescribed by the statute, and the entry having been duly cancelled by the department on account thereof, appellant, as widow, was entitled to the benefit of the act of June 15, 1880, which by its language grants to the party making the entry, or the transferee of such party by *bona fide* instrument in writing, certain rights of preëmption. It does not in terms refer to the widow or children of the party making the homestead entry, while sections 2291, 2292 and 2307 of the Revised Statutes, in respect to homestead entries, contain special provision therefor, as did also the act of September 7, 1850, known as the Oregon Donation Act, 9 Stat. 496, 499, c. 76, § 8, which cast a descent of the rights of a settler upon his heirs, including his widow. And the argument is worthy of consideration, that, because in some acts of Congress the widow is specifically named as entitled to rights originally vested in her husband, the omission to specify her in the act in question was an intentional exclusion of her from the privileges named therein, and that Congress did not intend to grant to others than the homesteader, and the persons holding under him by instrument in writing, any rights by reason of his incompleted homestead entry. Sutherland on Statutory Construction, sec. 327, and cases cited therein.

But it is unnecessary to rest our decision upon these matters. The laches of the appellant is such as to defeat any rights which she might have had, even if these prior questions were determined in her favor; and in this respect it is worthy of notice that there has been in a few years a rapid and vast change in the value of the property in question. It is now an addition to the city of Tacoma. The census of 1880 showed that to be a mere village, the population being only 1098. The census of 1890 discloses a city, the population being 36,006. Of course such a rapid increase during this decade implies an equally rapid and enormous increase in the value of property so situated as to be an addition to the city. And the question of laches turns not simply upon the number of years which

have elapsed between the accruing of her rights, whatever they were, and her assertion of them, but also upon the nature and evidence of those rights, the changes in value, and other circumstances occurring during that lapse of years. The cases are many in which this defence has been invoked and considered. It is true, that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him to now assert them.

A reference to a few of the cases in our own reports may not be out of place. In *Harwood* v. *Railroad Co.*, 17 Wall. 78, a delay of five years on the part of stockholders in a railroad company in bringing suit to set aside judicial proceedings, regular on their face, under which the railroad property was sold, was held inexcusable. In *Twin-Lick Oil Company* v. *Marbury*, 91 U. S. 587, a director of a corporation who had loaned money to it and subsequently bought its property at a fair public sale by a trustee, was protected in his title as against the corporation, suing four years thereafter to hold him as trustee of the property for its benefit, it appearing that in the meantime the property purchased had increased rapidly in value. In *Brown* v. *County of Buena Vista*, 95 U. S. 157, a county was held barred by its laches from maintaining at the end of seven years a suit to set aside a judgment fraudulently obtained against it; and that, too, though it did not affirmatively appear that the supervisors of the county had knowledge of the existence of the judgment till about twenty months before the commencement of the suit. In *Hayward* v. *National Bank*, 96 U. S. 611, a party who had borrowed money of a bank and deposited with it as collateral security certain mining stocks, which were sold by the bank upon his failure to repay the loan, was held barred by his laches in a

bill to redeem, filed four years thereafter, the stocks in the meantime having greatly increased in value. In *Holgate* v. *Eaton*, 116 U. S. 33, a married woman who, on being informed of a contract made by her husband for the sale of an equitable interest in real estate held by her in her own right, repudiated it and refused for two years to perform it, was not permitted thereafter to maintain a bill for specific performance of the contract, the value of the property having depreciated. In *Davison* v. *Davis*, 125 U. S. 90, a bill to compel the specific performance of a contract to sell personal property upon the payment of a promissory note, payable at a date after the making of the contract, was dismissed on the ground of the laches of the complainant in waiting five years after the maturity of the note before filing his bill, the property in the meanwhile having increased in value. In *Société Foncière* v. *Milliken*, 135 U. S. 304, a delay of two years in the commencement of proceedings to set aside a judgment for usury was adjudged fatal, the amount of the usury being small, and the judgment having been enforced in the meantime by the sale of real estate.

But it is unnecessary to multiply cases. They all proceed upon the theory that laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced — an inequity founded upon some change in the condition or relations of the property or the parties. In order to appreciate the force of these suggestions as applicable to the case before us a little further detail of the facts is necessary. And, going back to the commencement, it appears that the tract was a small one, the soil poor, and the land valuable chiefly for timber. Obviously the place was not one which a party would take and occupy with the idea of making a living off of and from it. Galliher was living at Olympia, a city about forty miles distant, engaged in running a hotel, and having children there being educated. He continued his business at Olympia, and, during the few months he lived after the entry, all that he did upon the land was to lay the foundation of a log cabin, and make a slight clearing. After his death his widow completed a

small house, and for two or three years she and her family lived at intervals, alternately, on the tract and in Olympia. In 1876 she took up her permanent abode at Olympia, abandoned the land, and never again had a residence thereon. In 1879 the homestead entry was legally cancelled. At that time and by that act all her rights of every kind and nature were ended, and the land was fully restored to the public domain, as free for occupation and purchase by any other citizen as though there had never been any semblance of occupation or entry. In June, 1880, months after all her rights in the land had been terminated, an act was passed by Congress granting certain privileges in respect to lands which had been theretofore entered for homestead. She was not one of either of the two classes of persons named in the act as entitled to its benefits. Nevertheless, she applied to the Land Department to purchase the land under its provisions. Her application was, by the Land Department, finally by its highest official on appeal, rejected; this decision being announced on the first of June, 1881. That same year another party entered the land, and, on April 20, 1882, received a patent therefor. At that time, if not before, she was in a position to establish her rights, if any, to the land. Six years before she had abandoned its occupation. She had asserted rights under an act not naming her as a beneficiary, and her application had been finally rejected by the proper authorities. Another, and a perfect legal title, had been created, in reliance upon the absolute termination of any interest or claim on her part. The very fact that upon the face of the statute she had been given no rights, and that her claim had been denied, demanded that she challenge the patent at the first opportunity. Counsel for appellant, arguing against an estoppel by reason of laches, says that the patentee and those claiming under him were chargeable with notice of her claim, because it had been duly filed in the local and General Land Office of the government, and that they therefore knowingly took all the chances of its validity. But if they knew that she had once made a claim, they also knew that it had been decided by the Department to be worthless, and had a right to assume from her inaction

that she acquiesced in that decision, and on that assumption to invest their money in the property and its improvement. The land was contiguous to a city beginning to grow rapidly in population; the courts were open to her for any assertion of rights; she was living but forty miles from the land, and must be presumed to have known something of the changes going on around it; the patentee died, and the title passed, by three or four conveyances, through as many different persons, at a constantly increasing price; and the tract was surveyed and platted as an addition to the city of Tacoma. More than four years after the entry by Wing, and nearly four years after the issue of the patent, the owner of this addition filed a bill, making several parties defendant, in order to quiet her title thereto, and, among these various defendants, summoned Mrs. Galliher. It is stated, in the opinion of the Supreme Court, that it was admitted in the argument, that, at the time this action was commenced, the appellee, and others holding under the patent, had made improvements upon the land of great value, and that the land and improvements upon it were worth $20,000. In this suit Mrs. Galliher appeared, and answered, and, for the first time in a court of justice, asserted any rights to the land.

Putting all these things together: her actual abandonment of the tract in 1876; the cancellation of the entry in 1879, which terminated all rights in the land which she then had; the omission of the "widow" from the act of 1880, and the doubt whether she was a beneficiary under that act, or could claim any rights thereunder; the rejection by the Land Department of her application in 1881; the entry of Wing in the same year, and the issue of a patent to him in 1882; the several conveyances at increasing prices; the improvements put on the land by the parties holding under the patentee; the rise in the value of the land; the platting of it as an addition to the city of Tacoma; her residence so near to Tacoma, with the knowledge she must have possessed of the changes going on in that city; — it seems to us that equity forbids that that homestead right, created fourteen years before, for which Land Office fees only were paid, which was once absolutely

terminated, and which may never have been resurrected, should, at this late day, be permitted to disturb a title, legally perfect, created by the general government after a decision adverse to any resurrection of such right, for which full value was paid, and on the faith of which costly improvements have been made, and which now represents enormous value, to the creation of which appellant has, apparently, contributed nothing.

*The decree is affirmed. The mandate will issue to the Supreme Court of the State of Washington.*