# PENN MUTUAL LIFE INSURANCE CO. *v.* AUSTIN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 44. Argued April 23, 1897. — Decided January 3, 1898.

The complainants in their bill predicated their right to relief upon the averment that certain ordinances adopted by the municipal authorities of Austin, and an act of the legislature of Texas referred to in their bill impaired the obligations of a contract which the bill alleged had been entered into with the complainants by the city of Austin, and that both the law of the State and the city ordinances were in contravention of the Constitution of the United States. *Held*, that these allegations plainly brought the case within the provision in the act of March 3, 1891, c. 517, 26 Stat. 826, conferring upon this court jurisdiction to review by direct appeal any final judgment rendered by a Circuit Court in any case in which the constitution or a law of a State is claimed to be in contravention of the Constitution of the United States.

The reason upon which the rule that the mere assertion of a claim, unaccompanied by any act to give effect to the asserted right, cannot avail to keep alive a right which would otherwise be precluded because of laches, is based not alone upon the lapse of time during which the neglect to

enforce the right has existed, but upon the change of condition which may have arisen during the period in which there has been neglect; and when a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired, it will not exert its equitable powers in order to save one from the consequences of his own neglect.
The facts in this case bring it within that rule.

THE court below sustained a demurrer to and dismissed for want of equity the bill of the complainants, by which, as citizens of the States of Pennsylvania, Maryland and New York, respectively, they impleaded the defendants, the one a municipal corporation created by a law of the State of Texas, and its Mayor and Board of Public Works, citizens of the State of Texas, and the other a corporation organized under the authority of the general laws of the State of Texas regulating the formation of corporations, also a citizen of that State.

The bill, which was filed on January 3, 1895, alleged in substance as follows: That the city of Austin was in 1892 a municipal corporation, and that for many years its inhabitants and the city itself for municipal purposes had been supplied with water by a corporation known as the City Water Company; that in 1882, in consequence of the growth of the city, both for the health of the people of the city, the safety of its property, and the development of its manufacturing industries, a larger supply of water was absolutely needed, and that the taxpayers presented a petition to the city authorities asking that an arrangement by contract or otherwise be at once made to afford the augmented water supply which was essential; that the municipality, being fully empowered by its charter to supply water and being authorized by the general laws of the State of Texas to make a contract for so doing, on the 13th day of April, 1882, did enter into a contract with the City Water Company to the end that a more copious supply of water should be furnished; that this contract gave to the company the right to furnish water for twenty years, with the privilege on the part of the city of buying at the end of ten years, or at any time on giving one year's notice, the

water works which the contract required the company to erect; that the contract fixed a reasonable price to be paid for the use of water to be furnished by the water company, provided for the establishment of a given number of hydrants for the use of the city, and stipulated a rental therefor; that it imposed upon the corporation obligations of the most onerous character, compelling it to erect a large and costly plant, to lay extensive mains and pipes, and to extend them at any time during the life of the contract wherever the city might direct, and exacted that the company should add new hydrants for municipal uses as the city might require, giving to the water company as compensation in addition to the rentals to be paid by the city for hydrants, as above stated, a commutation of municipal taxation.

The bill averred that the contract was in all respects advantageous to the city and beneficial to its inhabitants, and was indeed as to each and every obligation contained therein or resulting therefrom reasonable and just; that the city at the time the contract was entered into was not in a position to itself erect the works without inordinately increasing its burden of taxation, and that the contract contemplated that the water company should obtain the money to erect the works by issuing its negotiable bonds, since there was therein contained a stipulation that the money to become due for the rentals of the hydrants should be paid by the city to the trustee of any bonds which might be issued by the water company, so as to guarantee the prompt payment of the interest on any such bonds; that the water company, on the faith of the contract, issued to the Farmers' Loan and Trust Company its negotiable bonds for $250,000, secured them by mortgage upon all its property, present and prospective, and with the sum thus realized and other available resources, with integrity and fidelity and in complete compliance with every obligation resting on it, erected the desired water works plant, which afforded the desired supply of water; that of the bonds thus issued to the Farmers' Loan and Trust Company, $100,000 in amount were bought for more than their face value in open market by the Penn Mutual Life Insurance Company, one of

the complainants. The bill moreover alleged that, in March, 1883, after the plant had been constructed and many miles of mains had been laid, the city, by ordinance duly enacted, accepted the work, and declared that the water company had fully performed its obligations. That subsequent to this date, the city directed a very large extension of the mains and pipes to be made, which was promptly executed by the water company with money obtained from an additional issue of bonds to the Farmers' Loan and Trust Company amounting to $100,000, $10,000 of which Jacob Tome, another of the complainants, bought for full value in open market.

The bill then alleged that in 1884 the city of Austin contracted with a corporation known as the Austin Electric Light Company to build and carry on a plant required to light that city, and that this corporation issued its bonds to carry out its corporate purposes to the extent of $25,000. That in June, 1887, all the plant rights, privileges, franchises and obligations of this electric light company, as well as those of the water company, were, with the consent and approval of the city of Austin, transferred to a corporation known as the Austin Water, Light and Power Company, a Texas corporation having corporate capacity both to undertake the duty of supplying water and of furnishing light to the city of Austin; that, in consequence of its assumption of all the obligations of both the aforementioned companies, the Austin Water, Light and Power Company was required by the city to make considerable additions to its water mains, and, in order to obtain the capital to execute these directions of the city, that company issued to the Farmers' Loan and Trust Company of New York $750,000 of bonds, secured by mortgage upon all its property, $375,000 of these bonds being reserved to pay the outstanding bonds, (that is, the $250,000 first issue of the water company, the $100,000 second issue and the $25,000 issue by the Austin Electric Light Company,) and the remaining $375,000 being negotiated in open market for full value, the proceeds being expended in complying with the city's direction, and that $50,000 of these last bonds were purchased in open market for full value by Ogden and Robert Goelet,

the last named complainants. The bill averred that the water works thus originally established and extended were in every respect entirely adequate to supply every want, not only of all the inhabitants of the city of Austin, but of the municipality, and that in each and every particular the municipality was as advantageously placed with respect to a water supply as it could have been under any condition or circumstance whatever.

The bill then alleged that, despite the existence of the contract, and the entire justness and fairness of each and every obligation and stipulation therein contained, and without any just reason therefor, the city of Austin, on the 31st day of March, 1890, passed an ordinance entitled "An ordinance ordering an election to obtain the consent of the property tax paying qualified voters of the city of Austin, to the extension by the city council of the bonded indebtedness of the city of Austin for the purposes of constructing a system of water works and furnishing lights for the city of Austin." That this ordinance provided that an election should be held on the 5th day of May, 1890, to obtain the consent of the taxpayers for an increase of the bonded indebtedness of the city to the amount of $1,400,000 for the purpose of obtaining money to erect a system of water works and an electric light plant for lighting the city; that on the 5th of May, 1890, the election was held, as provided, and the taxpayers gave their assent to the proposition submitted by the ordinance, and that the city council thereafter declared the election to have been carried, and that the power to issue bonds had been sanctioned; that on July 21, 1890, the city passed an ordinance authorizing the increased issue of $1,400,000 of bonds, providing for the levy and collection each year, as long as the bonds should be outstanding, of a tax to aid in paying the same. This ordinance directed that the bonds on their face should not only contain a statement of the objects for which they were issued, but should also show that their payment was secured by all the sums to be collected for the use of the water to be furnished by the new plant, and the ordinance moreover contained a provision guaranteeing that the rates to be charged for the

water to be furnished should be so regulated that their prod-
uct would equal the sum of the interest on the bonds, and a
sinking fund to provide for the retirement of the principal
thereof.   The money to be realized from the sale of the bonds
was required to be set apart in a distinct fund, to be warranted
for from time to time in payment of the work as it progressed.
The character of the work to be done was moreover fixed by
an ordinance which empowered the board of public works to
construct water works by means of a dam across the Colorado
River at a designated point, in accordance with the plans of a
civil engineer who was named therein.

It was alleged that as the purpose and necessary effect of
the foregoing action of the city was to impair the contract
rights of the Austin Water, Light and Power Company held
by it as the assignee of the two original companies, the ordi-
nances passed by the city and each and everything subse-
quently done thereunder was void because repugnant to the
Constitution of the United States.   The bill moreover averred
that in April, 1891, the legislature of the State of Texas
passed an act giving a new charter to the city of Austin,
which contained an express grant of power to that city to
construct for its own use a water works plant, and that the
sole object of this new charter was to sanction the action of
the municipality previously taken, and therefore the act in
question was also void under the Constitution of the United
States, because it impaired the previous contract rights of the
Austin Water, Light and Power Company.

It was averred that the board of public works had "already
expended a large sum of money in the construction of a dam
across the Colorado River," and "are now actually laying
water pipe in and along the streets of the city of Austin, and
it is the avowed intention of the said city to press the con-
struction of said rival system of water works to a speedy
completion, and upon the completion of the same to discon-
tinue the taking of water from the said water company, and
to refuse to perform any obligation resting upon the said city
as embraced in the said contract with the said city water com-
pany."   It was alleged that the tax provided by the ordinance

which authorized the building of the new water works had been levied for the years 1893 and 1894, and that the property of the Austin Water, Light and Power Company had been assessed for this tax, and that the property of the company was thus being levied upon for a tax to be used for the purpose of erecting the new works which were intended to take the place of its plant, and thereby to destroy its contract rights. Although the bill was filed by the complainants in virtue of their rights as holders and owners of the bonds issued or assumed by the Austin Water, Light and Power Company as aforesaid, it contained no averment that either the bondholders, who were complainants, or any others, had at any previous time requested the trustee to take any action so as to prevent the accomplishment of the violation of the contract rights of the corporation and its bondholders, which it was alleged had inevitably arisen from the action of the city originating in 1890. The bill, however, contained the following averments:

"That as soon as the said city of Austin announced its intention of constructing a rival system of water works, and before anything was done in pursuance thereof, the said M. D. Mathers, president of the Austin Water, Light and Power Company, on behalf of the said water company and these bondholders, remonstrated with the said mayor and city council, and requested them and urged them not to violate the said contract, or to take any steps to depreciate the value of the property of the said water company, but to exercise the right which the said city has to purchase the said works at their appraised value; and the said bondholders have continued, ever since that time, to remonstrate with the said city of Austin and the officers thereof, but that the said city has entirely disregarded the said remonstrances and requests, and has openly repudiated all liability under the said contract."

And further the bill alleged:

"That your orators and the other bondholders of the said water company have repeatedly applied to the said Austin Water, Light and Power Company, and its president and board of directors, and requested them to institute proceedings

to protect the property of the said water company, and the rights therein of the said bondholders; but that the said water company has failed to comply with the request of your orators and said bondholders. But the said Austin Water, Light and Power Company, and the officers thereof, by reason of the contract relations existing between the said city of Austin and the said company, fear that the consequences of any such litigation instituted by the said Water Company, would be exceedingly disastrous and would precipitate adverse and hostile action by the said city of Austin."

The relief asked by the bill is thus stated in the prayer thereof :

"That your orators may have the decree of your honorable court, adjudging and decreeing that the said ordinance and contract, so accepted and acted upon by all the parties, are in full force and effect, and that the said contract is a valid and subsisting contract, binding upon the said city as well as upon the said water company and upon the said bondholders, and that the said city must abide by and perform the same, and that until its purchase of the said existing water works, in the manner and upon the terms set forth in the said contract, and that the said city of Austin, its mayor and city council and board of public works, have no right or power to construct a river water works system to, in any way, interfere with the rights of the said Austin Water, Light and Power Company, and that it is unlawful and inequitable for the said city of Austin to levy and collect the tax upon the property of the said Austin Water, Light and Power Company to be expended in the unlawful and inequitable manner hereinbefore alleged, in the construction of a rival system of water works; and that a writ of injunction may issue out of this honorable court restraining the said city of Austin, its mayor and city council and board of public works, and its other officers, servants, agents and employés, from taking a supply of water from any other source and from proceeding in constructing and maintaining a new and distinct system of water works, and from taking and appropriating to its own use, except in the manner provided in said contract, any portion of the

said works, so constructed at its instance and for its benefit with money furnished upon the faith of its obligation by the said Austin Water, Light and Power Company and the said bondholders, and that your orators may have such other and further relief as the case may, in equity, require and as to this honorable court may seem proper."

The demurrer which the lower court sustained, besides asserting that the bill disclosed no cause for equitable relief, rested upon seven grounds, which may be reduced to six, substantially as follows: 1st. Because by the constitution of the State of Texas the contract made by the city of Austin with the water company was void. 2d. Because the contract was beyond the power of the corporation as defined in its charter and as limited by the general laws of the State of Texas. 3d. Because the commutation of taxation granted to the water company was in its essence but an exemption, and the city was without power, under the constitution of the State of Texas, to grant it. 4th. Because even if an exclusive right was given to the water company, such grant under the constitution and laws of the State of Texas was subject to alteration, amendment or repeal by the legislature which had exercised such reserved power. 5th. Because the granting of any exclusive rights was forbidden by the constitution which was in force at the time the alleged contract was made. 6th. Because even if the complainants had any contract rights, and if there had been an impairment thereof, full and adequate remedy was afforded by an action at law, and there was, hence, no reason for the interposition of a court of equity.

*Mr. Skipwith Wilmer* and *Mr. D. T. Watson* for appellants. *Mr. Samuel B. Huey* was on their brief.

*Mr. S. R. Fisher* for appellees.

Mr. Justice White, after making the foregoing statement of the case, delivered the opinion of the court.

The jurisdiction of this court to review the decree of the trial court is denied, the contention being that if an appeal

from the decision of the trial court was desired, it should have been had in the Circuit Court of Appeals, and cannot be here obtained.

By the fifth section of the act of March 3, 1891, c. 517, 26 Stat. 826, creating the Circuit Courts of Appeals, jurisdiction is conferred upon this court to review by direct appeal any final judgment rendered by the Circuit Court " in any case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States." There can be no doubt that the case at bar comes within this provision. The complainants in their bill in express terms predicated their right to the relief sought upon the averment that certain ordinances adopted by the municipal authorities of the city of Austin, and an act of the legislature of the State of Texas referred to in the bill, impaired the obligations of the contract which the bill alleged had been entered into with the complainants by the city of Austin, and that both the law of the State of Texas and the city ordinances were in contravention of the Constitution of the United States. No language could more plainly bring a case within the letter of a statute than do these allegations of the bill bring this case within the law of 1891.

Not only were the averments of the bill, as to the invalidity of the state law adequate, but so also were the allegations as to the nullity of the city ordinances. These ordinances were but the exercise by the city of a legislative power which it assumed had been delegated to it by the State, and were, therefore, in legal intendment the equivalent of laws enacted by the State itself. *City Railway Co.* v. *Citizens' Street Railroad Co.*, 166 U. S. 557, and cases there cited. The argument by which it is sought to support the contention that a right to review the case by direct appeal does not exist, not only disregards the letter of the statute, but is unsound in reason. It says that the right to the direct appeal can alone rest on the proposition, " That the constitution or a law of the State of Texas conflicts with appellant's contract, and contravenes the Federal Constitution; in other words, it must affirmatively appear upon the face of complainant's bill

that there was involved in this case a Federal question, the determination of which was essential to a correct decision of the case." But the words of the statute, which empower this court to review directly the action of the Circuit Court, are that such power shall exist wherever it is claimed on the record that a law of a State is in contravention of the Federal Constitution. Of course, the claim must be real and colorable, not fictitious and fraudulent. The contention here made, however, is, not that the bill, without color of right, alleges that the state law and city ordinances violate the Constitution of the United States, but that such claim as alleged in the bill is legally unsound. The argument, then, in effect, is that the right to a direct appeal to this court does not exist where it is claimed that a state law violates the Constitution of the United States, unless the claim be well founded. But it cannot be decided whether the claim is meritorious and should be maintained without taking jurisdiction of the case. The authorities referred to as supporting the position indicate that the argument is the result of a confusion of thought, and that it arises from confounding the power of this court to review on a writ of error the action of a state court with the power exercised by this court, under the act of 1891, to review by direct appeal the final action of the Circuit Court where, on the face of the record, it appears that the claim was made that the statute of a State contravened the Constitution of the United States. These classes of jurisdiction are distinct in their nature, and are embraced in different statutory provisions. Having jurisdiction of the cause, there exists the power to consider every question arising on the record. *Horner* v. *United States*, 143 U. S. 570.

Conceding, without deciding, the legality and binding force of the contract as averred in the bill, and that the obligations which it created were materially impaired, not only by a law of the State of Texas, but also by the ordinances passed by the city, and the execution of such ordinances, all as alleged; conceding, moreover, without so deciding, that the Austin Water, Light and Power Company was the successor in law of the original corporations, and hence responsible for all

their obligations and entitled to all their rights; and, further, conceding that the complainants as bondholders have the capacity to assert the impairment of the contract made by the city of Austin with the City Water Company, it yet becomes at the outset necessary to decide whether granting, *arguendo*, all these propositions, the complainants are entitled to the relief which they seek, that is to say, whether they can be heard to invoke the interposition of a court of equity. As a prerequisite to the solution of this question, it is necessary to determine precisely the remedy which it is the purpose of the bill to obtain in order to redress the wrongs which it alleged to exist. Whilst the prayer of the bill asks that the validity of the contract be recognized, and whilst it also prays that the legality of the commutation of taxation created by the city ordinance be decreed, these prayers are made but the foundation or premise for the real relief which the bill invokes; that is, the exercise of the power to enjoin in order thereby to perpetually restrain the city of Austin from completing the water works, by it commenced, and from levying on the property of the Austin Water, Light and Power Company any taxation to be used to complete the new water works. The preliminary inquiry, therefore, is whether the complainants have so exercised their rights as to entitle them to prevent the city from completing the water works.

In *Speidel* v. *Henrici*, 120 U. S. 377, 387, the court said, speaking through Mr. Justice Gray:

"Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them. 'A court of equity,' said Lord Camden, 'has always refused its aid to stale demands, where the party slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence; where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced; and, therefore, from the beginning of this jurisdiction there was always a limitation to suits in this court.'"

In *Galliher* v. *Cadwell*, 145 U. S. 368, 371, speaking through Mr. Justice Brewer, it was said:

"The question of laches turns not simply upon the number of years which have elasped between. the accruing of her rights, whatever they were, and her assertion of them, but also upon the nature and evidence of those rights, the changes in value, and other circumstances occurring during the lapse of years. The cases are many in which this defence has been invoked and considered. It is true that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all."

In *Hammond* v. *Hopkins*, 143 U. S. 224, 250, through Mr. Chief Justice Fuller, the court said:

"No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith and reasonable diligence, but will discourage stale demands for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has occurred."

In *Willard* v. *Woods*, 164 U. S. 502, 524, the court said:

"But the recognized doctrine of courts of equity to withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time may be applied in the discretion of the court, even though the laches are not pleaded or the bill demurred to. *Sullivan* v. *Portland & Kennebec Railroad*, 94 U. S. 806, 811; *Lansdale* v. *Smith*, 106 U. S. 391, 394; *Badger* v. *Badger*, 2 Wall. 87, 95."

In *Lane & Bodley Co.* v. *Locke*, 150 U. S. 193, and *Mackall* v. *Cassilear*, 137 U. S. 556, it was held that the mere assertion of a claim, unaccompanied with any act to give effect to the asserted right, could not avail to keep alive a right which would otherwise be precluded because of laches. Indeed, the principle by which a court of equity declines to exert its powers to relieve one who has been guilty of laches as expressed in the foregoing decisions has been applied by this court in so many cases besides those above referred to as to render the doctrine elementary. *Whitney* v. *Fox*, 166 U. S.

637, 647, 648; *Gildersleeve* v. *New Mexico Mining Co.,* 161 U. S. 573, 582; *Abraham* v. *Ordway,* 158 U. S. 416, 423; *Ware* v. *Galveston City Co.,* 146 U. S. 102, 116; *Foster* v. *Mansfield, Cold Water etc. Railroad,* 146 U. S. 88, 102; *Galliher* v. *Cadwell, supra,* where the earlier cases are fully reviewed; *Hoyt* v. *Latham,* 143 U. S. 553; *Hanner* v. *Moulton,* 138 U. S. 486, 495; *Richards* v. *Mackall,* 124 U. S. 183, 189.

The reason upon which the rule is based is not alone the lapse of time during which the neglect to enforce the right has existed, but the changes of condition which may have arisen during the period in which there has been neglect. In other words, where a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired, it will not exert its equitable powers in order to save one from the consequences of his own neglect. The adjudicated cases, as said in *Galliher* v. *Cadwell, supra,* 372, "proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned; and that, because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him now to assert them." The requirement of diligence, and the loss of the right to invoke the arm of a court of equity in case of laches, is particularly applicable where the subject-matter of the controversy is a public work. In a case of this nature, where a public expenditure has been made, or a public work undertaken, and where one, having full opportunity to prevent its accomplishment, has stood by and seen the public work proceed, a court of equity will more readily consider laches. The equitable doctrine in this regard is somewhat analogous to the legal rule which holds that where one who has the title in fee to real estate, although he has not been compensated, "remains inactive and permits them (a railway company) to go on and expend large sums in the work, he will be

estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein and be restricted to a suit for damages." *Roberts* v. *Northern Pacific Railroad*, 158 U. S. 1, 11, and authorities there cited. As said in *Galliher* v. *Cadwell, supra*, 373 : "But it is unnecessary to multiply cases. They all proceed upon the theory that laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced — an inequity founded upon some change in the condition or relations of the property or the parties."

Do the facts in the case before us bring it within the rule of laches as expounded in the foregoing authorities? The rights of the water company, under its contract, were created long prior to the year 1890. Before that year the water works plant was constructed, and from it the inhabitants of the city of Austin were being supplied with water. The violation of the contract relied upon as impairing its obligations originated in 1890. The first step was the passage of an ordinance submitting to the voters of the city of Austin the proposition whether the bonded debt of the municipality should be increased by the issue of $1,400,000 of negotiable bonds, the proceeds arising from the sale of such bonds to be used in erecting the new water works. There was nothing clandestine in the conduct of the municipality, since its action was dependent on a municipal election. The holding of the municipal election followed, and, after it had taken place, occurred the passage of the ordinance, directing the issue of the new bonds, and providing that they were to be secured by the water rates to be collected from the new water works which were to be constructed. From the time of the submission to the vote, and of the ordinances issuing the bonds and directing the work to be done, all in 1890, until this bill was filed in 1895, no legal steps whatever appear by the bill to have been taken to prevent the consummation of the wrong which the bill alleges was necessarily to result from the action of the municipal authorities. During all this period it does not appear from the bill that the trustee representing the bond-

holders was ever called upon by them to take any steps whatever to protect their interest. It cannot be said that the bondholders were ignorant of the action and purposes of the city of Austin, since the bill avers that, conscious of the fact that their rights were to be impaired by the action of the city, they repeatedly called upon the Austin Water, Light and Power Company to take action on the subject, but that that corporation refused so to do, and that the bondholders continued to object to the proposed action of the city without doing anything whatever to protect their legal rights. The bill alleges the issue by the municipal authorities of the series of bonds provided for, since it says, in referring to the tax levied upon the property of the Austin Water, Light and Power Company, that for the purpose "of providing for the interest and sinking fund on the bonds of the said city of Austin, issued for said purpose," (that is, the new water works,) "the said city of Austin has levied a tax. . . ." The exact amount of the new bonds which have been issued is not specifically set out in the bill, but it is inferable from the allegations, to which we have just referred, that the whole series have been issued by the city, since the bill alleges that the taxation has been levied for the purpose of paying the bonds provided by the ordinance. Moreover, that either the whole or a large portion of the bonds have been issued is plainly deducible from other averments in the bill. The ordinance, which is an exhibit to the bill, provides that to pay for the work proposed the bonds should be discounted from time to time as required by the necessities of the situation, that the proceeds arising from their sale should be put to a special fund, and be warranted against by the proper city officer to pay for the work. And the bill avers that the city at great expense has nearly completed a costly dam across the Colorado River as a part of the work provided. The bill therefore presents a case where there has arisen during the existence of the delay a material change in the situation of the parties, and besides is one where rights of third parties have intervened. It cannot be said, under the case made by the bill, that the power of a court of equity can be exerted to

forbid the finishing of the water works structure, which the bill alleges has been largely completed, without seriously impairing the rights of the bondholders under the ordinances in question.   One of the methods of payment stipulated, as we have seen, for these bonds was the revenue to be derived from the new water works, and of course no such revenues can ever result if the water works are never to be finished.   It is certain, then, that if the completion of the new water works be restrained by an injunction, that the interest of the new bondholders will be seriously affected, and that this result will be brought about by a decree of a court of equity rendered in the enforcement of asserted rights of complainants, who, if they had taken timely action, could have adequately protected themselves from injury without resulting wrong to the rights of many other persons.

It being clear under such circumstances that the complainants were not entitled to the relief which they sought, it of course follows that

> *The court below did not err in sustaining the demurrer and dismissing the bill for want of equity.   We think, however, that the dismissal should have been without prejudice, and the decree below is therefore modified in that particular, and as so modified, it is affirmed.*