## METROPOLITAN S. S. CO. v. EASTERN S. S. LINES, Inc.

(Circuit Court of Appeals, First Circuit. December 18, 1926.)

No. 2063.

1. Receivers ⬤149—Intervention to prove claim in receivership proceeding held in subordination to and in recognition of propriety of main proceeding (equity rule 37).

Intervention in receivership proceedings, in attempt to prove claim allowable under decree authorizing sale of certain assets on condition that purchaser assume unpaid liabilities, *held* in subordination to and in recognition of propriety of main proceeding, in accordance with equity rule 37.

2. Receivers ⬤149—Corporation's claim in receivership proceeding for directors' breach of trust held not barred by laches.

Claim, presented in receivership proceeding by corporation, arising out of alleged breach of trust by directors and controlling forces therein, *held* not barred by laches after opportunity to establish rights, there being no showing of change of conditions.

3. Receivers ⬤149—Minority stockholders held not derelict for failure to intervene in receivership proceeding while litigating rights in state court.

Minority stockholders cannot be held derelict for not intervening in receivership proceeding to present claim growing out of alleged breach of trust by directors while still liquidating their rights in state courts.

Appeal from the District Court of the United States for the District of Maine; John A. Peters, Judge.

Consolidated suits by the Old Colony Trust Company, trustee, and the Berwind-White Coal Mining Company against the Eastern Steamship Corporation. From a decree sustaining a motion of the Eastern Steamship Lines, Inc., to dismiss the intervening petition of the Metropolitan Steamship Company, the intervener appeals. Reversed and remanded.

La Rue Brown, of Boston, Mass. (W. S. Linnell and Bradley, Linnell & Jones, all of Portland, Me., and Brown, Field & McCarthy, of Boston, Mass., on the brief), for appellant.

C. A. Hight and Albert A. Schaefer, both of Boston, Mass. (Ropes, Gray, Boyden & Perkins, of Boston, Mass., Charles D. Booth, of Portland, Me., John B. Pierce, of Boston, Mass., and Verrill, Hale, Booth & Ives, of Portland, Me., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

PER CURIAM. The appellee is the purchaser of steamship and wharf properties, sold under decree of the court below in receivership proceedings begun in November, 1914, and consolidated with a bill to foreclose a mortgage. The decree of March 9, 1917, authorizing the sale of certain receivership assets of the Eastern Steamship Corporation, the original defendant, contained the following pertinent provision:

"But this is upon the express condition, to which the said Eastern Steamship Lines, Inc., has consented, and by accepting the benefit hereof, does consent, that it will" pay "* * * all unpaid liabilities, indebtedness, and obligations of the defendant Eastern Steamship Corporation * * * heretofore or at any time hereafter admitted by the parties in interest or allowed and established by the court as valid claims and demands against the defendant Eastern Steamship Corporation; * * * said Eastern Steamship Lines, Inc., to be at liberty to contest any unsettled or disputed claim or claims arising upon intervening petitions in like manner as the receivers or any party to this cause might do."

The appellant's intervening petition, setting up a claim alleged to be allowable under this provision, was, on the appellee's motion, dismissed by the court below. This claim is grounded on allegations that in 1910 the petitioner, a New Jersey corporation, was deprived of Union Wharf, and certain other

steamship property, by fraud of its directors, and at a grossly inadequate price, pursuant to a plan instituted, in the main, by Edward Robbins, general counsel for the New Haven Railroad, to strangle the petitioner's water competition with the New Haven between New York and Boston. A leading feature of this plan was the removal, ultimately accomplished, of the Harvard and Yale, the petitioner's chief passenger steamers, from the Atlantic to the Pacific coast. The other main feature was the sale of other assets of the petitioner at a grossly inadequate price, procured by the fraudulent combination of Robbins with Stone and Austin, who are alleged to have been dominant in the ownership or control, or both, of the petitioner, and of other corporations through which the scheme was carried out. Austin was also principal receiver of the Eastern Steamship Corporation from November, 1914, to March, 1917, and Stone was one of the committee that formulated the plan of reorganization, dated August 28, 1916. The petition sets forth with much detail (immaterial on this motion to dismiss) the intermediate conveyances by which the wharf, vessels and other property, now in question, are alleged to have passed from the petitioner into the possession and control of the appellee under circumstances which charged each of the intermediate owners with knowledge of the fraud.

As bearing upon the petitioner's knowledge of and conduct in relation to the fraud, the petition alleges (also in much detail) that, after the removal of the Harvard and Yale from the Atlantic seaboard to the Pacific, a minority (how large does not appear) of its stockholders became suspicious of the management of their corporation; that after some investigation one Jennie R. Morse filed in New Jersey in March, 1913, a minority stockholders' bill, alleging fraud committed upon the petitioner by its directors, by the New Haven Railroad and by others, and seeking the appointment of a receiver; that after trial, the Vice Chancellor sustained this bill and appointed a receiver for the petitioner on February 3, 1917; that, while the decree appointing the receiver authorized him to institute suits for the recovery of property improperly diverted by the parties in control of said company, or of damages therefor, Robbins and his associates took an appeal from said decree, so that no such suit, although requested by the minority stockholders, was in fact brought; that as the result of negotiations with Robbins and his associates, pending the appeal, a settlement was made as to the damages suffered by the petitioner by reason of the transaction disposing of the Harvard and Yale, and a release therefor given to Robbins and certain of his associates, and the receiver discharged; that this release did not run to the appellee, or to any of the parties through whom the appellee claims title to the wharf and other properties now in question, nor cover rights as to any of said properties.

It follows that it was not until May, 1918, that the plaintiff was, as a result of the litigation in New Jersey and its later settlement, free to assert its claims against the wrongdoers. It is also alleged that after May 1, 1918, the plaintiff sought by negotiation a settlement of these wrongs, and, failing such settlement, brought in November, 1920, in the state court in Maine a suit, alleging substantially the same facts and seeking the same relief as it does by the present intervening petition.

By petition filed on March 1, 1921, the appellee sought and obtained a temporary injunction against the prosecution of the suit in the state court, on the ground that the court below had taken exclusive jurisdiction over all such questions as were there raised. This injunction allowed the appellant to file its petition for leave to intervene on or before May 25, 1921. The petition was so filed, and, after hearing, allowed on November 28, 1921, by a decree reserving all rights of both parties.

The motion to dismiss was filed on March 15, 1922, argued on May 26, 1922, and allowed on March 11, 1925, nearly three years later.

While the motion to dismiss alleges lack of equity, as well as laches and disregard of equity rule 37, the opinion of the court below seems to assume (and rightly so) that the petitioner has stated a case, good unless barred by laches. We therefore concur in the appellant's view that the only substantial questions now before us are the two questions dealt with in the opinion of the learned District Judge.

[1] 1. We are unable to adopt the view of the court below that this intervention was not "in subordination to and in recognition of the propriety of the main proceeding." Equity rule 37. The main proceeding was a receivership foreclosure and reorganization proceeding in which proof of claims is the almost universal incident. This petition is nothing but an attempt to prove a claim still allowable under the provision in the decree of March 17, 1917, quoted above. If, by reason of intervening rights or changed conditions, the petitioner's asserted claim of a right to rescind the sale for fraud be found inequitable, it will be transmuted into an ordinary

claim for damages and appropriately subordinated to any superior intervening rights. Stewart v. Joyce, 201 Mass. 301, 311, 87 N. E. 613; Lexington Print Works v. Canton, 171 Mass. 414, 416, 50 N. E. 931.

Our view of the application of the rule makes it unnecessary to discuss the glaring inconsistency of the appellee's present position with that taken when it sought and obtained an injunction against the petitioner's asserting its rights in the state court.

[2] 2. The contention that the petition itself discloses laches is—because of the time elapsed (now 16 years)—specious, but, on analysis of the facts alleged, entirely unsound. The familiar principle, here controlling, is stated in Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738, as follows:

"The cases are many in which this defense has been invoked and considered. It is true that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him to now assert them. * * *

"But it is unnecessary to multiply cases. They all proceed upon the theory that laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

Cf. Penn., etc., Ins. Co. v. Austin, 168 U. S. 685, 18 S. Ct. 223, 42 L. Ed. 626; Ward v. Sherman, 192 U. S. 168, 176, 177, 24 S. Ct. 227, 48 L. Ed. 391; No. Pacific R. R. v. Boyd, 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931.

The single question before us is whether, on the face of the pleadings, it appears that this petitioner, after it had an ample opportunity to establish its rights in a proper forum, so delayed the assertion of such rights as to make it unjust to permit it now to assert those rights.

The claim arose out of an alleged breach of trust by the directors and controlling forces of a corporation; the wrong was (primarily) a wrong upon minority stockholders. It was not a wrong of which such minority stockholders would have direct or immediate knowledge. They had a right to trust their directors. Pac. R. R. v. Mo. Pac. R. R., 111 U. S. 505, 521, 4 S. Ct. 583, 28 L. Ed. 498. It is common experience that wronged minority stockholders generally have a long, expensive, and discouraging task, both in discovering and in obtaining a remedy for injuries done them through breach of trust by directors. In this case the wronged minority litigated in New Jersey four years (1913 to 1917) before obtaining a decree in the trial court vindicating their right to a remedy for the transaction involving the Harvard and Yale. When trying this suit, some information as to their wrongs as to the other property now in question was obtained. But, even after the appointment by the New Jersey court of a receiver in February, 1917, neither the plaintiff nor the minority stockholders were in a position to assert the rights now involved. Those rights were in custodia legis. Pending appeal from the decree of the Vice Chancellor, it could hardly be expected that the court would authorize the receiver to embark on litigation relative to the wharf and other properties which had been conveyed to the Eastern Steamship Corporation some five years before. It follows that (as noted above) until May, 1918, the plaintiff was either in the control of the alleged wrongdoers (or some of them) or in the control of the New Jersey court.

[3] If we assume, but without deciding, that the conduct of the wronged minority stockholders may for present purposes be regarded as the conduct of the petitioner, that minority cannot be held derelict in not intervening in the receivership proceedings while still litigating for their rights (at least as to the Harvard and Yale) in the New Jersey courts. Reasonable time taken after May, 1918, for negotiations cannot be counted against the petitioner. The period within which it is even arguable that the petitioner was derelict was therefore a portion of the time between May 1, 1918, and November 17, 1920—about one-third of the ordinary 6-year period of limitation, in analogy to which equity frequently proceeds. The further delay of 6 years has been procured by the appellee or caused by the court below.

But in this comparatively short period between May, 1918, and November, 1920, there is nothing to indicate that the defendant made any such change in its condition or relations to any parties in interest, new or old, as to make it now inequitable to permit the petitioner to assert its rights. The reorganization—argued in such elaborate detail—was completed in 1917, over a year before the pe-

titioner was out of the control either of the alleged wrongdoers or of the New Jersey court. Nothing accruing during that reorganization can, on this record, be said to have been effected in a justifiable reliance that the rights now asserted were either worthless or had been abandoned. On the contrary, the fair inference is that Stone and Austin, leading factors in the reorganization, were fully informed as to the New Jersey litigation, the rights there vindicated as to the Harvard and Yale, and the information there obtained as to the rights in the wharf and other properties, then constituting a part of the receivership estate. It is unnecessary to add further available reasons for holding laches not disclosed on this record.

The decree of the District Court is reversed, and the case is remanded to that court, for further proceedings not inconsistent with this opinion, with costs to the appellant.