Petition of ANDREWS et al.

SMITH v. GUFFEY–GILLESPIE GAS PRODUCTS CORPORATION.

Circuit Court of Appeals, Third Circuit.
February 25, 1928.

No. 3670.

1. Receivers ⬅190—Receiver may be required to make accounting before discharge.

The law requires an accounting by receivers before their discharge, and any stockholder of a corporation in receivership has the right to demand such accounting if exercised in appropriate manner and within a reasonable time.

2. Receivers ⬅204—Stockholders held barred by laches of right to vacate discharge and demand accounting by receivers eighteen months after their discharge.

Stockholders of a corporation in receivership who were promptly advised by its president of discharge of the receivers and of its financial condition, which had greatly improved during the receivership, *held* barred by laches from maintaining a petition to vacate the decree discharging the receivers and to require them to make an accounting, not filed until 18 months after entry of the decree and during which time the corporation had prospered and *much of its stock had changed hands.*

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Suit in equity by William C. Smith against the Guffey-Gillespie Gas Products Corporation. From a decree denying the intervening petition of Jonathan Andrews and others to vacate a prior decree discharging receivers, petitioners appeal. Affirmed.

Alexander C. Tener, of Pittsburgh, Pa., Harry A. Heilman, of Kittanning, Pa., Swan, Keeney & Smith and Ernest Jenckes, all of Providence, R. I., Frank Davis, Jr., of Washington, D. C., and Henry Woog, of New York City, for appellants.

H. Fred Mercer, Gifford K. Wright, and Alter, Wright & Barron, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This litigation shows clearly what sometimes happens in federal courts; in part commendable and in part not desirable. Aside from formal proceedings, District Judges very generally make themselves easily accessible to receivers whom they have appointed and willingly lend a hand in solving receivership problems. Of this habit receivers freely avail themselves. The practice springs from the trust the judge has in his receiver and the confidence the receiver has in the judge and from the earnest desire of both promptly and effectively to work out the receivership. It is a commendable practice and at most times operates greatly to the benefit of everyone interested. But the judge not infrequently suffers for his readiness to help when he and the receiver, acting informally, do a thing that some one does not like. The undesirable feature of such conduct is the informality that inevitably creeps into the receivership proceedings, and when a proceeding grows informal it is more than likely to become lax, and may be technically irregular, and then the court has to pay the penalty. And so it is in this case.

This receivership was the outgrowth of a bitter controversy that had long been going on between Joseph F. Guffey and E. N. Gillespie, of Pittsburgh, Pennsylvania. The former was president and the latter vice president of the Guffey-Gillespie Gas Products Corporation. Both had been partners in the oil and gas business and were founders of that corporation and the Thermatonic Carbon Company, its subsidiary. The former corporation was a holding company, the latter the operating company producing carbon black of high quality by patent processes. Both Guffey and Gillespie were large holders of the shares of the Gas Products Corporation and the Guffey faction was in control. The corporation had become disorganized by the hostility between the warring factions; its business was bad; it was heavily in debt; it had few liquid assets and was fast drifting on the rocks. This was its condition when in October, 1924, a stockholders' bill praying the appointment of a receiver was filed. On the same day the corporation, through Guffey, answered by admitting the truth of all its allegations and the court appointed a receiver. Conceiving that the receiver so appointed was favorable to the Guffey faction, the Gillespie faction applied for the appointment of another receiver ostensibly to represent it. The District Judge—who doubtless knew what he was doing—made the appointment, but as it turned out the two receivers instead of representing the opposing interests represented the judge and the common interest, just as they should. The receivers and the judge then set about the administration of the estate. Their first problem was to quiet pressing creditors and the only way to do that was to pay them. The only way open to get money with which to pay the corporation's debts was by resort to certain shares of the stock of the subsidiary company. This they proceeded to do—the receivers and the judge conferring and cooperating all the while—until they acquired and disposed of the shares in a way, in number and on terms not necessary to recite here. Finally, all debts of the corporation were paid; the receivership expenses were assumed and paid by it and, as the exigency for the receivership had passed and the outcome was seemingly satisfactory to every one, the court discharged the receivers without requiring them to file an account. This is where the trouble began; but in point of time it did not begin until a year and a half later. [1] The discharge of the receivers and the return of the property to the corporation occurred on August 27, 1925. On February 28, 1927, stockholders, residing in New England and owning 893 of the 10,000 shares of preferred stock and 395 of the 90,000 shares of the common stock of the corporation, filed in the District Court a petition praying that it vacate its order discharging the receivers without an accounting and enter a new order directing the receivers to file an account. They base their petition on what in ordinary circumstances would be their undoubted right to an accounting and excuse their delay by the assertion that they had "no notice or knowledge, or means of knowledge, of the proceeding * * * nor of the petition * * * to discharge the receivers * * * nor had they notice or knowledge of the order * * * discharging the said receivers without filing their account in court * * * except" as they were informed by circular letters emanating from the corporation and addressed to all stockholders, to which we shall advert presently.

The petitioning stockholders do not either specifically or generally charge fraud in the conduct of the receivership; nor do they impute to the judge any wrongdoing in his order discharging the receivers without an accounting. They take the stand that there should have been an accounting, that in law they as stockholders are entitled to one, and they now want it in order to discover whether there was fraud or wrongdoing involved in the affairs of their company when entrusted to the receivers and the court. In deciding whether they are entitled to what they now ask, we shall lay aside as matters not pertinent to the present consideration the representations of the Gas Products Corporation, the appellee, that the petition to vacate the order is not filed in good faith, that Gillespie is behind it and wants to collect an unjust debt now in litigation in another court, and that certain of the petitioners desire to gain control of the corporation. We come directly to the main question whether, in the orderly administration and termination of a receivership, the law requires an accounting. Without discussing the obvious, we hold that it does. That being the law, the next question is whether a stockholder, no matter how small his holding may be, has a right to demand an accounting. Again avoiding discussion of what is plain, we hold that in ordinary circumstances he has. But the real question is whether in the circumstances of this case, the petitioning stockholders have a right now to demand an accounting, a right at one time assuredly theirs. We hold they have not, and for these reasons:

We are not convinced that the petitioning stockholders were ignorant of the discharge of the receivers without an accounting, or, if ignorant, that they were not charged with knowledge of that fact.

On May 16, 1925, pending the receivership, Guffey, as president of the corporation, addressed a circular letter to stockholders telling them of the appointment of receivers, stating that the expenses of the company had been curtailed and its indebtedness reduced, and that there was a substantial sum of money in the treasury, and predicting that the company would "be taken out of the receivers' hands in the very near future." Then follows a recital of the business done in products shipped and an expectation of greater shipments and better business, concluding with the statement that, "Later, the receivers will file with the United States District Court, a complete report which will be available to stockholders and others interested." As the receivers did not make an accounting this promise was not fulfilled.

On August 28, 1925, the next day after the discharge of the receivers, the corporation, again through Guffey, its president, addressed a circular letter to the stockholders announcing that all liabilities of the corporation had been paid and the receivers discharged and stating that "the affairs of the company are in excellent condition and the directors anticipate that dividends on preferred stock will be resumed" in the early part of the next year and promising a financial statement as "of the date of the discharge of the receivers" as soon as it could be prepared.

On September 25, 1925, the third circular letter went to stockholders containing a balance sheet of the corporation "as of August 27, 1925, the date of the discharge of the receivers." This balance sheet is important not only in that it discloses assets of over $1,500,000 with liabilities of only $18,088.18 exclusive of capital liability, but also in that it recites the method by which the corporation had refinanced itself and got on its feet, namely, by acquiring a block of the shares of the Thermatonic Carbon Company, the subsidiary, owned by the inventors whose processes that company practiced, for a small cash payment and a per pound royalty on carbon sold and by causing the Carbon Company to liquidate its indebtedness to the corporation by purchasing the majority of the corporation's outstanding liabilities, and shows that the balance of its indebtedness was discharged by its own moneys, all without the aid of or payment of commissions to brokers.

[2] Thus, one day after the receivers were discharged, the petitioning stockholders were informed of the end of the receivership, and one month later they were told of the corporation's improved condition and the refinancing that had brought it about. This was enough to put them on inquiry. But they say they were waiting for the promised report of the receivers which never came, and thus were lulled to inaction. Yet with full knowledge that the receivership was wound up they did nothing for eighteen months, while during that period very much was happening with the corporation. Indeed, a complete transformation occurred. Emerging from the receivership clear of debt, its business improved, profits were earned, assets increased, its shares freely traded in at rising prices and ownership of its stock substantially changed until, in a word, the corporation, resuscitated and daily changing in personnel, became prosperous. Thus a marked change was wrought in the corporation's affairs during the year and one-half the petitioning

stockholders did nothing. What would now be the effect of affording them an accounting by the receivers, a right clearly theirs at one time? The plain legal effect would be to reinstate the receivership, and the certain practical effect would be greatly to injure the corporation and seriously disturb the investments of those who in the meantime and in all innocence had bought its shares.' We think the petitioning creditors have by their laches lost the right to an accounting, not because of the length of time they slept, for the test of laches is not time, but because of changes in the situation which render the allowance of the petition inequitable and unjust. 21 C. J. 233; Brown v. Buena Vista, 95 U. S. 157, 160, 161, 24 L. Ed. 422; Penn Mutual L. Ins. Co. v. Austin, 168 U. S. 685, 698, 18 S. Ct. 223, 42 L. Ed. 626; Mason v. MacFadden (C. C. A.) 298 F. 384, 391; In re Mutual Benefit Co., 190 Pa. 355, 357, 358, 42 A. 706.

The decree of the District Court refusing to vacate the decree discharging the receivers is affirmed.