## THE HAWAIIAN TRAMWAYS COMPANY, LIMITED, *v.* THE RAPID TRANSIT AND LAND COMPANY.

### DECIDED: DECEMBER 4, 1901.

1. The decision of the Supreme Court of the Territory of Hawaii construing the charters granted by the Legislature of Hawaii to two certain street railway corporations and deciding their respective rights thereunder to lay tracks in certain of the streets of the city of Honolulu, Territory of Hawaii, held to be binding upon the United States District Court upon an application for an injunction by one of said corporations to restrain the other from laying tracks in said streets of Honolulu, and said Court to be without jurisdiction, in the absence of any showing that a Federal question was involved. The injunction denied.
2. It is always presumed that an attorney appearing and acting for a party to a cause has authority to do so, and to do all other acts necessary or incidental to the proper conduct of the case, and the burden of proof rests on the party denying such authority to sustain his denial by a clear preponderance of the evidence.

IN EQUITY. { Application for injunction to restrain laying of street railway tracks on King street, in city of Honolulu.

*J. J. Dunne* and *John T. De Bolt*, attorneys for petitioner.

*W. R. Castle* and *Kinney, Ballou & McClanahan*, attorneys for respondent.

ESTEE, J.  This is a bill in equity filed by the Hawaiian Tramways Company, Limited, and verified by the oath of W. H. Pain, as manager for said company, to enjoin the defendant, its associates, counsellors, solicitors, agents, contractors and servants from entering into or upon King street, in the city of Honolulu, for the purpose of locating, constructing or operating a street railway therein, adjoining, alongside of or parallel with the street railway of the Hawaiian Tramways Company, Limited, and from digging up or subverting the soil, surface or paving of said King street or doing any other acts in said King street tending to obstruct in any way the free and common use thereof as had theretofore been enjoyed, or tending to intermeddle or interfere with or obstruct the rights of the petitioner therein, or in the beneficial enjoyment of its franchises therein.

Petitioner also prays for a preliminary injunction against the said Rapid Transit and Land Company from doing the aforesaid acts.

An order to show cause why a preliminary and temporary injunction  should not issue against it, was directed to the Rapid Transit and Land Company, made returnable on the 11th. day of November, 1901.

The facts as shown by the bill and the affidavits and oral testimony introduced at the hearing appear to be these:

That the Hawaiian Tramways Company, Limited, is a foreign corporation organized under the laws of Great Britain and Ireland, and operating in the streets of Honolulu, the street railway hereafter mentioned; that in and by Act XVIII. of the Session Laws of 1884, of the Kingdom of Hawaii, a grant was made to "William H. Austin and his associates and assigns or such corporation as may be incorporated or organized by him or them, to construct, lay down, maintain, and operate for the term of thirty years from the passage of this Act, a single track street railway with all the necessary curves, switches and turnouts, or double track street railway through such of the streets mentioned in this Act........along and upon the following

streets in the city of Honolulu......". Among said streets enumerated, was King street.

The Hawaiian Tramways Company, Limited, is the successor in interest of the said William R. Austin and his associates.

On July 7th, 1898, Act 69 of the Session Laws of 1898 was passed by the Legislature of the Republic of Hawaii and duly signed by the President of the Republic. In and by said Act 69, a grant was made to Clinton G. Ballentyne and others, conferring the right "to construct, lay down, maintain and operate for the term of thirty years after the railway authorized by this Act shall have been commenced, a railway, either single or double track, or partly single and partly double, with such curves switches, turnouts, poles, wires underground or overhead conduits and such other appliances and appurtenances as may from time to time be necessary for the use and operation thereof along and upon the following streets, roads and places in the District of Honolulu.........."

The portion of King Street in Palama mentioned in the bill of plaintiff is not included in said list of streets and roads.

Section 3 of said Act provides the nature of the motive power to be used by the grantees of the franchise.

By Section 6 of the Act last aforesaid, it is provided—

"1st. Authority is hereby given the said Association and others to occupy the streets and use the tracks of the Hawaiian Tramways Company, Limited, in accordance with the provisions of Section 3 of Chapter 34 of the Laws of 1884, entitled 'An Act granting to William R. Austin, and his associates, the right to construct and operate a street railway upon certain streets in the city of Honolulu,' provided that the said Association and others shall comply with the provisions and requirements of this Section."

"2nd. Whenever it shall be necessary to cross the tracks of any other railway, the said Association and others are authorized to construct and lay down at their own expense, proper crossings removing the rails so crossed for that purpose; but such construction and removal shall be done in such manner as to

least interfere with the traffic of such other railway; and after the crossings are laid, the expense of maintenance shall be borne equally by the said Association and others, and the owners or lessees of such other railway."

"3rd.    In the use of any portion of the tracks of the Hawaiian Tramways Company, the cars of the Hawaiian Tramways Company or of the said Association and others, shall not remain standing on the portion used jointly, but shall make only such stops as are required to take on and let off passengers."

It is further provided by Subdivision 11 of Section 2 of Act 69 of the Session Laws of 1898, that "Whenever a majority of the owners of property on any street or road in said Honolulu shall, in writing, petition said association and others to lay a railway in such street or road, and the Executive Council shall consent thereto, such railway may be laid thereon and thereafter may be maintained and operated for the unexpired term of said franchise."

By the provisions of Section 86 of an Act of the Congress of the United States, entitled "An Act to provide a government for the Territory of Hawaii," approved the 30th day of April, 1900, all of the powers and duties which by the laws of the Republic of Hawaii were conferred upon and required of said Executive Council, not inconsistent with the Constitution and laws of the United States, were conferred upon and required of the Governor of the Territory of Hawaii.

The Honolulu Rapid Transit and Land Company, respondent herein, and a corporation organized and existing under and by virtue of the laws of the Republic of Hawaii, is the successor and assign of Clinton G. Ballentyne and others.

It further appears that ever since the assignment of the rights, privileges and franchises granted to William R. Austin and his associates, to the petitioner herein, to wit: some time prior to the 14th day of November, 1890, the petitioner herein has operated and maintained and still operates and maintains upon the streets of Honolulu, a street railway including the street known as King street therein, and on that portion thereof referred to in said bill.

That the Rapid Transit and Land Company, after becoming the assignee in interest of Clinton G. Ballentyne and his associatets, and after its incorporation on August 31, 1898, began publicly to construct a street railway in Honolulu, the said showing of cause alleging that said respondent "is now and since the 31st day of August last, has been operating a street railway of the type aforesaid through a number of the principal streets of said Honolulu under and by virtue of its said charter."

It is admitted that the Rapid Transit and Land Company had at the time of the filing of the bill herein, commenced to construct and is constructing a street railway along King street for a distance of more than 1700 feet thereon and along that portion thereof westward from Liliha street and referred to in the bill, and in such construction of said portion of said street railway is running parallel to the railway track of the said plaintiff and petitioner.

It is claimed by the respondent that its action in so doing is in conformity with the grant in its franchise (Act 69 of the Session Laws of 1898 aforesaid,) and of a decision of the Supreme Court of the Territory of Hawaii, namely, the case of the *Rapid Transit and Land Co. v. Hawaiian Tramways Company, Limited,* reported in 13 Haw., P. 363, and in response to a petition of a majority of the property owners on said King street, and with the consent of the Governor of the Territory of Hawaii in accordance with law and the regulations of the departments of the territorial government of Hawaii vested with authority in the premises.

The bill of plaintiff claims that the action of the said respondent is in derogation of the prior valid rights of petitioner under its franchise, and that the laying of such tracks will interfere with and impair the beneficial enjoyment of the prior valid franchise of the petitioner.

The jurisdiction of this Court is invoked through allegations in the bill that the charter of the respondent is unconstitutional, null and void, is in conflict with the constitution of the United States of America; and that said charter and each and every

portion thereof is in conflict with the laws of the United States and in particular with that certain Act of the First Session of the Fifty-sixth Congress of the United States approved April 30th, 1900, and entitled "An Act to provide a government for the Territory of Hawaii."

It further appears that W. H. Pain, from the year 1889, has been and now is manager of the business of the said petitioner in the city of Honolulu.

That prior to the filing of the bill in equity herein, to wit: on the 22nd day of January, 1901, in accordance with the provisions of Section 1255 to 1258 inclusive of the Civil Laws of the Territory of Hawaii, a submission of certain alleged facts was made to the Supreme Court of the Territory of Hawaii, and a decision therein rendered by the said Supreme Court on the 25th day of April, 1901, in an action entitled *The Rapid Transit and Land Company v. The Hawaiian Tramways Company, Limited. Supra.*

The facts of the controversy as set forth in the said submission signed by the parties thereto and as appears in the opinion and judgment of the said Supreme Court of the Territory of Hawaii, reported in 13 Haw., Page 363, were as follows:

1. "That the said Tramways Company, as authorized by law, is operating a street railway or tramway in Honolulu, in the Territory of Hawaii, and occupies a single track with switches and turnouts on King street from the Waikiki road to a point near the Government pumping station at Kalihi. Said Tramways Company proposes to lay a double track other than the necessary turnout and switches along said King street and to operate thereon a tramway by electricity.

2. "That the said Honolulu Rapid Transit and Land Company is the lawful holder of a franchise granted to Clinton G. Ballentyne and others by Acts 69 and 70 of the Session Laws of 1898, and having received a petition from the majority of the owners of property on said King street and the Executive Council having consented thereto, for that portion of said King street lying between Nuuanu stream and Thomas Square, it

proposes to lay such railway and to operate the same on said street, between said points, the distance between said points being greatly in excess of seventeen hundred (1700) feet."

3.  "That no act which could be construed as an act of acceptance of the Act of 1890, was done by the Hawaiian Tramways Company, Limited, until after the expiration of the time limit set out in the Act of 1895."

4.  "That in the month of June, 1899, the Hawaiian Tramways Company, Limited, notified the Minister of the Interior of its intention to lay a double track on all the roads covered by its franchise, and inclosed in the notification to the Minister of the Interior a statement of the proposed alignment of the double track on the streets and requested the Minister of the Interior to notify the Company if he had any suggestion to make as to the grade or alignment. About the 25th. day of July, 1899, the Minister of the Interior replied to the Hawaiian Tramways Company, stating that he had no objection to offer to the laying of the proposed tracks and no suggestions to offer as to the grade or alignment, and the Hawaiian Tramways Company, Limited thereupon proceeded with the work, preparatory to laying the double track."

The following are the issues of law:

1.  "Has the Hawaiian Tramways Company, Limited, the right to lay a double track along King street as above described?

2.  "Has the Hawaiian Tramways Company, Limited, the right to operate a tramway by electricity?

3.  "Has the Honolulu Rapid Transit and Land Company the right to lay a track on King street for more than 1700 feet?" The judgment of the Supreme Court being that the first of the two last above questions were answered in the negative, and the third question in the affirmative.

Upon the submission in the aforesaid case, Messrs. Kinney, Ballou & McClanahan appeared as attorneys for the Rapid Transit and Land Company, and Messrs. Paul Neumann and

Holmes & Stanley appeared as attorneys of record for the Hawaiian Tramways. Company, Limited.

Thereafter, on the 6th. day of November, 1901, the date of the filing of the bill herein, a bill in equity was filed in the Circuit Court of the First Judicial Circuit of the Territory of Hawaii by the Hawaiian Tramways Company, Limited, verified by W. H. Pain, as manager of said Company. in an action entitled *The Hawaiian Tramways Company, Limited, v. The Rapid Transit and Land Company*, wherein J. J. Dunne, John T. De Bolt and Thomas Fitch represented the petitioner. The said bill sets up substantially the same facts with the exception of the jurisdictional clause, and prays for substantially the same relief as in the bill herein.

In the bill filed in the First Circuit Court of the Territory, the following sworn allegation appears (the same allegation being substantially set up in the affidavit of said W. H. Pain, filed herein in support of his bill) to wit:

"Your orator further shows that on the 22nd day of January, 1901, a certain purported controversy was attempted to be submitted for decision to the Justices of the Supreme Court of said territory; and that thereafter on March 27th, 1901, a purported 'stipulation to submit additional facts' was sought to be filed in said submission of said purported controversy; and thereafter on the 28th and 29th days of March, 1901, said submission of said purported controversy came on for hearing before said Supreme Court of said Territory; and in this behalf. your orator shows that a duly certified copy of said submission and of the pretended proceedings had therein, is attached hereto and is made a part hereof and is marked "Exhibit A." And your petitioner further shows that, thereafter, to-wit: on April 28th, 1901, said Supreme Court acting solely in pursuance to said pretended and purported submission of said pretended controversy, made and gave its decision thereon, which said decision is fully reported .........."

"Your petitioner further shows that said pretended submission and all proceedings had therein, and the decision made and given therein and all pretended rights and privileges flowing therefrom, or defined or limited thereby, was and were and are wholly null and void, and of no effect, value or validity whatever; and in this behalf your orator respectfully shows that said Supreme Court was then and there in the matter of said pretended submission of said pretended controversy, and in its decision and judgment there wholly without any authority, power, warrant of law or jurisdiction either to hear or to determine said pretended submission of said pretended controversy; that your orator never appeared in said alleged submission, either in person or by attorney, nor did your orator sign or authorize any person in its behalf to sign or consent to the said pretended submission; that your orator never received, accepted or acknowledged service of process of any character in said alleged submission, either in person, attorney or otherwise; that the pretended appearance in said alleged submission of Paul Neumann, Esq., or of Messrs. Holmes & Stanley, or either of them as attorneys or as counsel for your orator herein, was wholly unauthorized by your orator, and was entirely without either the knowledge or consent of your orator; and that your orator never knew anything concerning said pretended submission of said alleged controversy, until after the said pretended submission had been made and said decision rendered, made and given."

Upon the hearing of the order to show cause, a motion was filed by the Rapid Transit and Land Company, through its attorneys, and upon the affidavit of Clinton G. Ballentyne, for a rule against J. J. Dunne and John T. De Bolt, to show their authority to act as attorneys for the petitioner herein. An order was made by the Court for the said J. J. Dunne and J. T. De Bolt to show their authority to act as attorneys for the petitioner, and also to show their compliance with the provisions of the Civil Laws of the Territory of Hawaii, relative to the filing by foreign corporations of certain documents in the

archives of the territory. In response to said order a voluminous affidavit was filed by W. H. Pain, as manager of the petitioner, together with certain other documentary evidence.

In said affidavit, said Pain alleges the following:

"This affiant further shows that from 1889 to the present time he has been and still is the sole manager and representative of said plaintiff and petitioner, corporation aforesaid, and as such had control, direction and management exclusively of all the transactions of said corporation in said Honolulu, during all the times herein mentioned; and this affiant during all the times herein mentioned and as part of his authority and duties as said manager, had the exclusive control and management of all the business, affairs and transactions of said corporation in Honolulu, and represented said corporation therein including . . . . . . the employment and discharge of attorneys and counsellors, control and management of all litigation. . . . . . . . . . with full power of representation of said corporation in all of said matters and in all matters incidental thereto or connected therewith . . . . . . . . . ."

After the introduction of certain oral evidence, these two propositions and the general question of the issuance of a preliminary injunction were argued before the Court and the matter submitted for its decision.

The complainant is a foreign corporation organized under the laws of Great Britain and Ireland. It has no director or other officer, except its manager, W. H. Pain, residing within the jurisdiction of this Court or without the jurisdiction of Great Britain and Ireland. Since 1889, W. H. Pain, as he testifies, has acted as the sole manager of this corporation in these Islands; during this time he has had the exclusive control of all its affairs in this territory, "including the employment and discharge of attorneys and counsellors, and the management and control of all litigation."

Complainant is now seeking for a temporary injunction against respondent, which is allowable only when, from a full statement of the facts a permanent injunction might be granted.

It appears from the facts brought out on the hearing, and as hereinbefore stated, that the complainant and respondent were heretofore parties to certain litigation affecting their charter rights to construct and maintain street railways in the city of Honolulu, and especially in relation to their right to lay a street railway track on King street in the city of Honolulu; and being desirious of settling their differences as to their respective rights to the use of King street in Honolulu, they did, pursuant to Sections 1255 and 1258 inclusive of the Civil Laws of the Territory of Hawaii, on the 22nd day of January, 1901, enter into an agreement whereby their differences were submitted to the Supreme Court of the Territory of Hawaii for its adjudication and which adjudication the parties agreed to abide by. This agreement and statement of facts was originally signed by "Honolulu Rapid Transit and Land Company, by W. R. Castle, and Kinney, Ballou & McClanahan. Hawaiian Tramways Company, Ltd. By Holmes & Stanley, of counsel." And a further agreement or stipulation was also made and executed on the 27th day of March, 1901, which was signed by "Kinney, Ballou & McClanaham, attorneys for the Hon. Rapid Transit and Ld. Co.," and by "Holmes & Stanley, Attys. for Hawaiian Tramways Co., Ltd.," and submitted to the Supreme Court of the Territory of Hawaii, as appears by the Exhibit "A" which is made a part of the affidavit of W. H. Pain, filed in support of his bill in this proceeding.

It also appears from said Exhibit "A," that Clinton G. Ballentyne, as manager of the Honolulu Rapid Transit and Land Company, and W. L. Stanley of Holmes & Stanley, attorneys for the Hawaiian Tramways Company, made oath before Edmund Hart, a notary public, that the controversy "is real and the proceedings in good faith to test the rights of the parties."

The minutes of the clerk of the Supreme Court of the Territory of Hawaii for the 28th day of March, 1901, (a portion of said Exhibit "A") show, that all the attorneys for both sides of said controversy appeared before said Court, and that W. L. Stanley, one of said attorneys for the Hawaiian Tramways Com-

pany, read said agreed statement of facts to the Court and argued the case on the part of said company; that Mr. McClanahan argued the case for the Honolulu Rapid Transit and Land Company, and that on the 29th day of March, 1901, both Mr. Stanley and Mr. Paul Neumann replied to the argument of Mr. McClanahan.

It was also uncontradicted that Mr. Pain was present in the said Supreme Court and listened to the argument made therein at that time, and at no time until the institution of the proceedings in this Court has he objected to said submission on the part of the complainant or even to the decision of the Court.

The case was decided by the Supreme Court of the territory on the 25th day of April, 1901, and that decision remains the law of that case by which the rights of the parties in this case to the use of King street, were settled.

It appears further from the evidence in this proceeding, that from 1889 to the present time, Mr. W. H. Pain has been and still is the sole manager and representative of the said plaintiff and petitioner in this territory, and as such he has had control, direction and management of all the transactions of said corporation in said Honolulu, "including......the employment and discharge of attorneys and counsellors and the control and management of *all litigation*."

The complainant is now trying to avoid the effect of the decision of the Supreme Court of the territory in the case referred to, alleging that no statement of facts was agreed upon by it or by any person authorized to agree upon such statement of facts, and that it had no knowledge of any such submission, notwithstanding that Mr. W. H. Pain is its exclusive representative here and has the "management and control of all litigation of the company," and is now acting as the manager and representative of the company in instituting the proceeding in this Court; Mr. Pain being also the only person testifying to the effect that complainant is not bound by the aforesaid decision and that the said agreement and statement of facts was without the authority or knowledge of the complainant.

It has been shown in this proceeding that Mr. Pain was in the Supreme Court during the argument and submission of the facts in that case. He testifies that he was present; and it is uncontradicted that he is the only officer or agent of the corporation in Honolulu. Now, if from 1889 to the present time, Mr. Pain has had the exclusive control and management of all the business of the complainant, "including the employment and discharge of attorneys and counsellors, and the control and management of all litigation," he must have had power to control this litigation, if what he swears to in his affidavit is true. And if he had power to control all of the litigation of complainant from the year 1889, why did he sit quietly by without making a protest to the Court or to any one else on behalf of the company he represented until a final judgment was entered in that case against his company, and not even then? If the attorneys therein were not acting within his authorization, he had the right to discharge them, and it was his duty to his principal to discharge them and to make a summary application to the Court for redress.

He admits he was in Court during the proceedings in the territorial Supreme Court, and he testified on the hearing herein, when examined in relation to the stipulation for submission of further facts in the Suprme Court matter, that "he knew some question arose as to whether they should do something and they did," showing his entire familiarity with the case and the action being taken by the attorneys therein.

"There is no principle of practice better settled in our American law, than that an appearance in Court by an attorney for a client, carries with it the presumption of authority to appear." *Bonnifield et al v. Thorp,* 71 Fed. Rep. 924.

It is always presumed that an attorney appearing and acting for a party to a cause has authority to do so and to do all other acts necessary or incidental to the proper conduct of the case, and the burden of proof rests on the party denying such authority to sustain his denial by a clear preponderance of the evidence.

*Hill v. Mendenhall*, 21 Wall U. S. 453; *Osborn v. Bank of United States*, 9 Wheaton, U. S. 741.

And this is especially so in relation to foreign corporations, which can only appear by attorney.

It is clear that managing officers of corporations have power to employ attorneys and counsellors without delegations of power or formal resolutions to that effect. And while Mr. Pain claims that he did not authorize these attorneys, Messrs. Holmes & Stanley or Paul Neumann, Esq., now deceased, to act as the attorneys for the corporation complainant in that case, yet the whole of the proceedings in the case, including the appearance in Court of the manager of the complainant (and its only representative in these Islands) during the proceeding, and the silence of complainant ever since the rendition of the decision, shows that it tacitly admitted to that Court the authority of the attorneys to act in the matter. And again, while Paul Neumann, Esq., has since deceased, yet Messrs. Holmes & Stanley are here, and if the complainant so desired could have had their testimony in this proceeding.

The decision of the Supreme Court, construing the charters of the parties to that action and their respective rights thereunder, including the right to lay the track on King street on the part of respondent herein for a distance of more than seventeen hundred feet thereon, is binding upon this Court in the event there was no Federal question involved.

*Western Union Telegraph Co. v. Call Publishing Co.*, 181 U. S. 92; *Egan v. Hart*, 165 U. S. 188; *Chicago, Burlington etc., R. R. Co. v. Chicago*, 166 U. S. 116, 242; *Gardner v. Bonestell*, 180 U. S. 362.

It was said in the case of the *Guaranty Trust Co. of N. Y. v. Galveston City R. Co.*, 107 Fed. 311, 320, that:

"We follow the interpretation given to the statutes of a state as appears by the decision of the Supreme Court of the state."

*Aberdeen Bank v. Chehalis County*, 166 U. S. 440; *Nobles v. Georgia*, 168 U. S. 398; *Fordyce v. DuBose*, 87 Texas, 78.

No federal question appears to be involved in the proceedings before this Court and no argument was presented in favor

of any such question.  It is true the petition of complainant alleges that there is a constitutional question involved in that the granting of the franchise to the Rapid Transit and Land Company was in violation of the prior valid rights of the complainant, but I find further in the submission of facts to the Supreme Court that it was admitted that the said "Honolulu Rapid Transit and Land Company is the lawful holder of a franchise granted to Clinton G. Ballentyne and others by Acts 69 and 70 of the Session Laws of 1880 . . . ."

Can the complainant, after admitting in one Court of competent jurisdiction the lawful holding of a franchise by the respondent, and having the case tried upon that theory, then come into another Court of different jurisdiction, and deny the validity of that franchise in an attempt to invoke the jurisdiction of that other Court in a proceeding in equity? This Court will not consider such an attempt.

It does not seem necessary to pass upon the question whether the complainant has complied with all the statutes of the Territory of Hawaii in relation to foreign corporations, in rendering the decision in this matter.

One of the questions submitted to the Supreme Court of the territory as appears from the foregoing statement of facts is:

"Has the Honolulu Rapid Transit and Land Company the right to lay a track on King street for more than seventeen hundred feet?"

To which inquiry the Supreme Court, after an exhaustive inquiry into the various statutes and franchises under which the two parties were acting, decided in the affirmative.   And that is substantially the only question now before this Court, and which has been settled by the decision of the Supreme Court of the territory.

This Court will not listen to a collateral attack made in this case upon a judgment of the Supreme Court of the territory.

It is an established principle of equity jurisprudence, elementary in its nature, that "he who seeks equity must do equity." And that he who asks equitable relief must come into Court

with clean hands. The complainant has not come into this Court with clean hands.

*Galliher v. Cadwell*, 145 U. S. 368; *Whitney v. Fox*, 166 U. S. 637; *Penn. Mutual Life Insurance Co. v. Austin*, 168 U. S. 685, 698.

Messrs. Dunne and De Bolt, attorneys for the complainant, this Court holds are properly authorized to act in this proceeding, yet from all the facts there has not been such a showing made as will entitle this Court to assume jurisdiction in this matter, or entitle the complainant to any equitable relief herein. The preliminary injunction is denied, and the bill dismissed with costs.