# SCHICKLER *v.* WASHINGTON BREWERY COMPANY.

### CORPORATION; STOCK AND STOCKHOLDERS.

1. The provisions of the by-laws of a company incorporated under the British companies act of 1862, and limited by shares, relative to the notice necessary to be given to stockholders, govern, and not the provisions of the statute, which are only intended to apply in the absence of by-laws on the subject.

2. Stockholders of a corporation are conclusively presumed to have knowledge of its articles of association or by-laws as well as of the laws under which it is incorporated, and cannot be heard to say that they are ignorant of their provisions.

3. The stockholders of a company which goes into liquidation, and transfers its assets to another company, in return for its stock, are not creditors of the liquidating company to the value of their stock because of a provision of the statute under which it was incorporated, providing that the shares of stock of members of the company who dissent in writing within a prescribed time from the date of the corpo-

rate resolution providing for such scheme of liquidation shall be purchased or the scheme of liquidation abandoned, where they fail to dissent after receiving notice of meetings of the company called for the purpose of effecting the liquidation, with details of the proposed scheme, retain the checks for the purchase price of their shares, which were subsequently sold by the liquidator, and take no steps to enforce their supposed rights as dissenting stockholders or creditors for nearly two years.    (Construing secs. 161 and 162, British companies act of 1862.)

4. Independently of any statute of limitation on the subject for the guidance of courts of law, equity may refuse to grant relief when it is sought after an unreasonable and unexplained delay.

5. The courts of the sovereignty under the laws of which a corporation is organized, alone have jurisdiction to inquire into and regulate its internal affairs.    (Following *Clark* v. *Mutual Reserve Fund Life Asso.* 14 App. D. C. 154, 43 L.R.A. 390.)

No. 1957.   Submitted February 5, 1909.   Decided March 2, 1909.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, dismissing a bill in equity to recover the value of certain corporate stock.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a final decree of the supreme court of the District of Columbia, dismissing appellants' bill of complaint in an action brought to recover the value of certain preferred stock held by the complainants, John Schickler, Frederick W. Dieste, Michael J. Fennel, Patrick R. Carr, Charles E. Marlow, Michael J. Farrington, Agnes C. Brandes, and Agnes C. Brandes, Executrix of Henry Brandes, deceased, in the defendant corporation. It appears that the Washington Brewery Company, limited, referred to in the bill of complaint as the old company, was a corporation organized in 1889 under the British companies act, with capital stock of 135,000 pounds sterling, divided into 6,000 8 per cent cumulative shares of 10 pounds sterling each, and 7,500 shares of common stock of the same par value per share.

With the proceeds of the sale of this stock, the old company caused to be organized under the laws of the State of New York the Washington Brewery Company, a corporation with a capital stock of $200,000, all of which was placed in the hands of certain trustees, to be used for the sole use and benefit of the English company. The New York company then purchased, on behalf of the English company, a brewery plant located in the city of Washington, District of Columbia, from one Albert Carey, paying therefor the sum of $705,000, part being paid in cash and the balance by notes secured by deeds of trust upon the property.

In September, 1897, the English company caused to be organized under the laws of the State of Virginia another corporation of the same name, with a capital stock of $200,000, which was likewise placed in the hands of trustees for the sole use and benefit of the English company. At the same time, the New York company transferred, without consideration, to the Virginia company, all the property located in the city of Washington, which company from that time conducted the said brewery for the use and benefit of the English company, the New York company being abandoned.

About the 16th day of May, 1904, all of the complainants, as stockholders in the English company, received from the secretary of said company a circular letter bearing the postmark of London, England, and the date of May 7, 1904. This letter set forth a scheme which the directors of the English company deemed necessary for a reorganization of the company. This scheme was as follows:

"1. A new company shall be incorporated under the companies acts, 1862 to 1900, with a capital of £80,000, divided into 80,000 shares of £1 each, to be called 'The Washington Brewery Company, Limited,' or some other suitable title.

"2. The object of the new company shall include the acquisition of the existing company's undertaking and properties.

"3. The existing company shall transfer its undertaking and properties to the new company in consideration of 71,420 shares of the new company, credited with 15s. per share as paid up thereon .

"4. Each preference shareholder in the existing company shall have the right, within a period of fourteen days next after the posting to him by the liquidator of a notice requiring him to apply for the same (with power for the liquidator in special cases to extend such period), to claim an allotment of ten such shares in the new company, credited as aforesaid in respect of each £10 share in the existing company held by him. And each ordinary shareholder in the existing company shall have the right to claim an allotment of two such shares in the new company, credited as aforesaid in respect of each one £10 share in the existing company held by him.

"5. The unpaid amount of 5s. in respect of such shares in the new company shall be payable as to 1s. per share on application, 1s. on allotment, and the balance in calls not exceeding 1s. per share, to be made in such manner that no call shall be payable at an interval of less than two calendar months after the due date for payment of the last preceding call, but the allottee may elect to pay up such calls in one payment in advance at any time.

"6. The reconstruction shall be carried out under sec. 161 of the companies acts, 1862, and accordingly the existing company shall be placed in voluntary liquidation."

With this letter was also the following notice of a special meeting of the stockholders of the corporation, to be held in the city of London:

The Washington Brewery Company, Limited,
16 Victoria Street,
Westminster, S. W.

Notice is hereby given that an extraordinary general meeting of the company will be held at Winchester House, Old Broad street, in the city of London, on the 16th day of May, 1904, at 12: 45 o'clock in the afternoon, for the purpose of considering, and, if thought fit, passing the resolutions following, namely:

1. "That it is desirable to reconstruct the company, and accordingly that the company be wound up voluntarily, and that Thomas Toten Willcox, of 16 Victoria street, in the city of

Westminster, be and he is hereby appointed liquidator for the purposes of such winding up, at a remuneration of 50 guineas."

2. "That the said liquidator be and he is hereby authorized to consent to the registration of a new company, to be named 'The Washington Brewery Company, Limited.' "

3. "That the draft agreement submitted to this meeting and expressed to be made between this company and its liquidator of the one part, and the Washington Brewery Company, limited, of the other part, and, for the purpose of identification, initialed by the chairman, be and the same is hereby approved, and that the said liquidator be and he is hereby authorized, pursuant to sec. 161 of the companies act, 1862, to enter into an agreement with such new company when incorporated, in the terms of the said draft, and to carry the same into effect, with such, if any, modifications as he thinks expedient."

Should the above resolutions be passed by the requisite majority, they will be submitted for confirmation as special resolutions to a second extraordinary general meeting, which will be subsequently convened.

Dated this 7th day of May, 1904.

By order of the board.

T. Toten Willcox, secretary.

The resolutions contained in the notice were submitted to the shareholders at the special meeting on the 16th of May, 1904, and were adopted. On the 20th of May following, a second notice was sent out to the shareholders of a meeting to be held on the 31st day of May for the purpose of submitting for confirmation the resolutions theretofore adopted. The scheme of reorganization was to be carried out under secs. 161 and 162 of the companies act of 1862, which are as follows:

"Where any company is proposed to be or is in the course of being wound up altogether voluntarily, and the whole or a portion of its business or property is proposed to be transferred or sold to another company, the liquidators of the first-mentioned company may, with the sanction of a special resolution of the company by whom they were appointed, conferring either a gen-

eral authority on the liquidators, or an authority in respect of any particular arrangement, receive in compensation for such transfer or sale shares, policies, or other like interests in such other company, for the purpose of distribution amongst the members of the company being wound up, or may enter into any other arrangement whereby the members of the company being wound up may, in lieu of receiving cash, shares, policies, or other like interests, or in addition thereto, participate in the profits of or receive any other benefit from the purchasing company; and any sale made or arrangement entered into by the liquidators in pursuance of this section shall be binding on the members of the company being wound up; subject to this proviso, that if any memner of the company being wound up who has not voted in favor of the special resolution passed by the company of which he is a member at either of the meetings held for passing the same expresses his dissent from any such special resolution in writing, addressed to the liquidators or one of them, and left at the registered office of the company not later than seven days after the date of the meeting at which such special resolution was passed, such dissentient member may require the liquidators to do one of the following things as the liquidators may prefer, that is to say: either to abstain from carrying such resolution into effect, or to purchase the interest held by such dissentient member at a price to be determined in manner hereinafter mentioned, such purchase money to be paid before the company is dissolved, and to be raised by the liquidators in such manner as may be determined by special resolution. No special resolution shall be deemed invalid for the purposes of this section by reason that it is passed antecedently to or concurrently with any resolution for winding up the company, or for appointing liquidators; but, if an order be made within a year for winding up the company, by or subject to the supervision of the court, such resolution shall not be of any validity unless it is sanctioned by the court.

"The price to be paid for the purchase of the interest of any dissentient member may be determined by agreement; but, if the parties dispute about the same, such dispute shall be settled by

arbitration; and for the purposes of such arbitration the provisions of the companies clauses consolidation act, 1845, with respect to the settlement of disputes by arbitration, shall be incorporated with this act; and in the construction of such provisions this act shall be deemed to be the special act, and 'the company' shall mean the company that is being wound up, and any appointment by the said incorporated provisions directed to be made under the hand of the secretary or any two of the directors may be made under the hand of the liquidator, if only one, or any two or more of the liquidators, if more than one."

Complainants allege in their bill that the notice mailed to them under date of May 7, 1904, of the first special meeting of the stockholders was not received by them until the 16th day of the same month, the very day that the meeting was held, and that the notice of the second special meeting called for the 31st day of May, which was mailed to them on the 20th of May, was not received by them until on or about the date of the meeting. It is further alleged that these notices came too late to enable them to avail themselves of the right to vote and right to dissent, as provided for in sec. 161 of the companies act; and, by reason of insufficient notice, they allege that they stand in the same position and have the same rights as though they had been "dissentient" shareholders. Being in this position, they contend they are creditors of the corporation, and entitled to all the rights provided for in the companies act requiring the liquidators "either to abstain from carrying such resolutions into effect, or to purchase the interest held by such dissentient member at a price to be determined in manner hereinafter mentioned."

On the 15th of June following, the liquidator sent to the complainants a notice to the effect that shares of the new company had been allotted to them, and also a formal subscription, together with the following notice:

To American Shareholders:

In order to give you sufficient time to apply for your shares

in the new company.  I have arranged with the directors to ·
extend your time for sending in claims to the 11th July, 1904.

T. Toten Willcox, liquidator.

Later, on the 29th of July, 1904, a further circular was sent,
informing the appellants that "a final opportunity would be
afforded them to take the shares allotted, this notice further ex-
tending the time for subscriptions until August 10, 1904.  The
final account of the liquidator, closing up the affairs of the old
English corporation, was rendered September 13, 1905.  This
cause was heard on bill and answer, and from the decree dis-
missing the bill, the case comes here on appeal.

*Mr. John C. Gittings, Mr. Joseph M. Tepper,* and *Mr. J. M.
Chamberlin* for the appellants.

*Mr. Henry F. Woodard* and *Mr. Arthur A. Birney* for the
appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

At the threshold of this inquiry, we are confronted with a
question of jurisdiction, which we think will dispose of this
appeal.  It is insisted that the complainants did not have legal
notice of the meetings in London of the stockholders of the Eng-
lish company.  Section 97, table A, of the first schedule of the
companies act, is as follows: "Any notice, if served by post,
shall be deemed to have been served at the time when the letter
containing the same would be delivered in the ordinary course of
the post, and, in proving such service, it shall be sufficient to
prove that the letter containing the notice was properly ad-
dressed and put in to the postoffice."  Section 15 of the same act
provides: "In the case of a company limited by shares, if the
memorandum of association is not accompanied by articles of
association, or in so far as the articles do not exclude or modify
the regulations contained in the table Marked "A" in the first
schedule hereto, the last-mentioned regulations shall, so far as ·

the same are applicable, be deemed to be regulations of the company in the same manner and to the same extent as if they had been inserted in articles of association, and the articles had been duly registered."

It is urged that, inasmuch as the English corporation was organized as a company limited by shares in accordance with, and subject to, the companies acts, the above statutory regulations as to notice do not apply to this corporation, but that notice may be given as provided by the articles of association or by-laws; in other words, that the statute as to notice only applies to corporations organized under the companies act having no by-laws or articles of association on this point. The articles of association of the old English company contained the following provisions as to notice:

"148. Any notice may be served by the company upon any member whose registered place of address is in the United Kingdom, either personally or by sending it through the post in a prepaid letter addressed to such member at his registered place of address.

"149. A member whose registered place of address is not in the United Kingdom may, from time to time, notify in writing to the company some place in England to be called his address for service, which shall be deemed his registered place of address for the purpose of the last preceding clause hereof, and any notice may be served by the company upon such member by sending it through the post in a prepaid letter addressed to him at such address.

"150. As regards members (if any) who have no registered address, a notice posted up in the office shall be deemed to be duly served on them at the expiration of twenty-four hours after it is so posted up.

"153. Any notice sent by post shall be deemed to have been served at the time when the letter containing the same is posted, and, in proving such service, it shall be sufficient to prove that the letter containing the notice was properly addressed and put in a postoffice letter box or handed in at a postoffice."

On this point, we agree with counsel for defendant that the

provisions of the by-laws relative to notice govern, and not the provisions of the statute, which were only intended to apply in the absence of by-laws. It is alleged in the answer, and consequently admitted, that the notices here in question were sent out and posted in strict compliance with the by-laws of the company. When complainants became stockholders of this company, they were conclusively presumed to know its articles of association or by-laws, as well as the law under which it was incorporated; and any failure on their part to so acquaint themselves with the organization of the corporation will not be excused. They cannot escape the force and effect of these provisions by disclaiming knowledge of their existence. The complainants must be deemed to have had sufficient notice of the meetings of the company.

But it is contended that, under the circumstances here detailed, the complainants, without any affirmative action on their part, became dissentient stockholders. With this we do not agree. The statute does not automatically create a dissentient stockholder. There is no vested right in a stockholder to become such by mere operation of the statute. The right can only be obtained by the affirmative action of the stockholder himself. The way is pointed out in the act, and only by following its provisions strictly can a stockholder become a creditor of the corporation to the extent of the value of his stock at the date of the liquidation of the company. Complainants received the first notice on the 16th of May, 1904,—twenty-one days before they were required to file their dissent under the statute; and the second notice was received on or about the 30th of May, at least seven days before they were required to file their dissent. But it is said that they could not foresee what the results of the meetings would be. They were charged with knowledge of both the requirements of the law and the by-laws of the company, and with the proposed scheme of reorganization; and, as a protection, could have given notice of their dissatisfaction with the proposed change and their desire to dissent in the event such change should be approved. The second notice gave notice of the approval at the former meeting of the resolution providing

for the change, and ordinary prudence would have indicated the necessity of at once forwarding their dissent which had yet time to reach London within the time required by statute. Instead, they ignored these notices, as well as the subsequent notices to comply with the new arrangement for the issuance of their stock, for a period of almost two years. In the meantime, their shares of stock, in compliance with the plan of reorganization, were sold by the liquidator, and checks for the purchase price remitted to them. They retained the checks without giving notice of any dissatisfaction. Many of the stockholders in the old company accepted the stock of the new company and paid their aassessments, and many new stockholders were added by purchase of stock in the new company. These stockholders had a right to rely upon the adjustment made with complainants as being satisfactory to them, in the absence of notice to the contrary. Some months later, and prior to the filing of this bill, the liquidator concluded the reorganization and filed his report as required by law. We think complainants were guilty of such laches as may be justly imputed to them in a court of equity. It is well settled that, independent of any statute of limitations on the subject for the guidance of courts of law, equity may refuse to grant relief when it is sought after an unreasonable and unexplained delay. *Galliher* v. *Cadwell,* 145 U. S. 372, 36 L. ed. 740, 12 Sup. Ct. Rep. 373; *Abraham* v. *Ordway,* 158 U. S. 420, 39 L. ed. 1039, 15 Sup. Ct. Rep. 894.

But, independent of the above objection, we are of the opinion that, since the complainants cannot be regarded as dissentient shareholders, and, as such, creditors of the corporation, there is an entire lack of jurisdiction to maintain this action in the courts of this District. What the English company did was to evolve and carry through a scheme of reconstruction. It was done under the laws of Great Britain. It is not apparent to us how this action could have been interfered with by the courts of this District. As suggested in the brief of appellee: "Suppose, on the 16th day of May, when complainants received their first notice, they had come into court and asked for an injunction to prohibit the English company from going forward with the

scheme of reconstruction. Would not this court have said to them, 'You must appeal to the courts of that country where your company was organized?' How may this court substitute itself for the liquidators as provided for by the English act? We submit it cannot." The proceeding was had under the law of Great Britain, and related entirely to the internal affairs of the corporation. At most, there could only be an action for the conversion of the stock, and that would have to be brought against the liquidator who converted the stock of the old corporation to the use of the new, with the new company joined as a party defendant. It is not clear just how a court of the District of Columbia could get service upon and enforce process against these parties in Great Britain, especially for the purpose of reviewing the acts of a corporation which were done under the laws of that country, and for which they are there exclusively answerable.

It is well settled in this country that the courts of a State where a corporation is organized have alone jurisdiction to inquire into and regulate the internal affairs of such company. The law on this subject is extensively and ably reviewed with many citations by Chief Justice Alvey in *Clark* v. *Mutual Reserve Fund Life Asso.* 14 App. D. C. 154, 43 L.R.A. 390. In that case, at page 179, the court said: "It is thus apparent, from the statement of the facts alleged in the bill, and from the several prayers based thereon, that the relief sought, if it could be granted, would require the control, direction, and revision of the internal affairs of the corporation by a court of equity of this District. This, we think, upon the clearest authority, cannot be done. The law would seem to be too well settled to admit of a question that, where the acts complained affect the plaintiff in his rights of corporator, or stockholder, or as a member of a mutual benefit or insurance company or other corporation, and the acts are those of the corporation, done and performed in the course of the administration of the corporate affairs, and especially when claimed to have been done and performed, or authorized to be done, by virtue of authority derived from its charter or by-laws, the courts of another state or jurisdiction will not

interfere or attempt to exercise jurisdiction to direct, control, or revise corporate action. To assume jurisdiction over the affairs of a foreign corporation, would inevitably lead to conflicting decisions, resulting in confusion and needless litigation, and the making of orders and decrees simply to be contemned, because not capable of being enforced. The court, if it were to undertake to act in such cases, has no power, and therefore cannot bring the officers, or the corporate books, or the assets of the corporation within its jurisdiction, to be subject to its process."

The judgment of the trial court dismissing the bill was right. It is affirmed with costs, and it is so ordered.          *Affirmed.*