HALL, District Judge,
dissenting in part and concurring in part in the judgment.
While City of Sherrill v. Oneida Indian Nation, 544 U.S. —, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005), has an impact on this case, it does not compel the conclusion that the plaintiffs are without any remedy for what the District Court found to be the illegal transfer of their land. My understanding of City of Sherrill is that it supports the majority’s conclusion that the plaintiffs cannot obtain ejectment of those currently in possession of the land which was, over 200 years ago, the Cayuga Nation’s Original Reservation. However, based on the nature of the claims long asserted in this case, the elements of the defense of laches, and the language and precedent relied on in City of Sherrill, I cannot join the majority in its conclusion that laches bars all of the plaintiffs’ remedies, including those for money damages. Therefore, I respectfully dissent in part and concur in part in the judgment.
I. Procedural History
The majority sets forth an excellent summary of the extensive background to this appeal. There are, however, a few procedural aspects that bear noting.
The history of this case makes clear that the Cayuga plaintiffs[1] have, from its filing, asserted multiple causes of action and sought multiple remedies. The complaint states a claim, inter alia, for trespass damages. The Cayuga plaintiffs allege that “[a]ll of the defendants are in trespass” and that “[t]he defendants are keeping plaintiffs out of possession of their land in violation of the common law and 25 U.S.C. § 177 (The Non-Intercourse Act).” Cayuga Indian Nation Compl. at ¶ 50. The Cayuga plaintiffs sought several forms of relief, including declaratory relief, ejectment, an accounting, and trespass damages for the fair rental value of the land. It bears noting that the statute of limitations established by Congress did not expire until approximately three years fol *281 lowing the date this action was filed. 28 U.S.C. § 2415(a) (“for those claims that are on either of the two lists published pursuant to the Indian Claims Limitations Act of 1982, any right of action shall be barred unless the complaint is filed within (1) one year after the Secretary of the Interior has published in the Federal Register a notice rejecting such claim .. 48 Fed.Reg. 13920 (Mar. 31, 1983) (listing Cayuga’s “Nonintercourse Act Land Claim”); see also County of Oneida v. Oneida Indian Nation of N.Y., 470 U.S. 226, 243, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (“Oneida II”) (“So long as a listed claim is neither acted upon nor formally rejected by the Secretary, it remains live.”)
While the majority may be correct that “ejectment is [the plaintiffs’] preferred remedy,” Maj. Op. at 274, there is certainly nothing in the record to suggest that the Cayuga plaintiffs relinquished their claims for money damages. See, e.g., Cayuga Indian Nation v. Cuomo, 565 F.Supp. 1297, 1305-06 (N.D.N.Y.1983) (“Cayuga I”) (“With respect to the common law bases for their claim, references are made in plaintiffs’ papers to ‘ejectment’, ‘trespass’, ‘waste’ and ‘conversion’, either as analogous forms of action or as indices of damages.”). Indeed, federal common law provides the Cayuga plaintiffs with a variety of remedial theories. “The Supreme Court has recognized a variety of federal common law causes of action to protect Indian lands from trespass, including actions for ejectment, accounting for profits, and damages.” U.S. v. Pend Oreille Pub. Util. Dist. No. 1, 28 F.3d 1544, 1549 n. 8 (9th Cir.1994), cert. denied, 514 U.S. 1015, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995). The District Court found that, “the plaintiffs are not specifying a single source for their substantive possessory right, or a single source for their right of action” and read the complaint and the plaintiffs’ papers to state a claim “derived from the Nonintercourse Act itself or from federal common law.” Cayuga I, 565 F.Supp. at 1306. Such a claim has been recognized to include as a remedy a monetary award for damages. Oneida II, 470 U.S. at 235-40, 105 S.Ct. 1245. Thus, the plaintiffs here have sought money damages from the filing of this case.
The District Court addressed the application of equitable defenses early in the case, when it considered the non-state defendants’ argument “that the equitable remedies of rescission and restitution are no longer available where the use and the value of the land has changed drastically, and where it is held by innocent purchasers.”[2] Cayuga I, 565 F.Supp. at 1310. The court concluded on the basis of Second Circuit precedent that, while laches did not bar the Cayuga plaintiffs’ claims, it may later become relevant with respect to the relief sought. Id.
After the District Court held that the 1795 and 1807 land conveyances to New York State were invalid, Cayuga Indian Nation v. Cuomo, 730 F.Supp. 485, 493 (N.D.N.Y.1990) (“Cayuga III”), the District Court again faced the question of laches. Cayuga Indian Nation v. Cuomo, 771 F.Supp. 19, 20 (N.D.N.Y.1991) (“Cayuga V”). However, the District Court again relied on pre-City of Sherrill precedent to find that the action had been filed timely and that laches did not apply. Id. at 20-24 (citing Oneida Indian Nation of New York v. Oneida County, 719 F.2d 525, *282 538 (2d Cir.1983); Oneida Indian Nation of New York v. New York, 691 F.2d 1070, 1084 (2d Cir.1982)).
On November 5, 1992, the United States filed a motion to intervene. It did so both on its own behalf and as trustee to the tribe. In its Answer to the United States’ Complaint in Intervention, which, inter alia, sought trespass damages, the State alleged that the common law defense of laches barred the claims of and relief sought by the United States. The District Court never reached the question of whether laches could be asserted against the United States in this case because the parties stipulated that the court’s previous rejection of the defense as to the other plaintiffs would apply with equal force as to the United States.
Following the District Court’s grant of partial summary judgment on the question of liability, the defendants then moved to preclude ejectment as a remedy. The court found “that from the outset ejectment is one of several remedies which the Cayugas have been seeking, and their claims also have been framed in terms of ejectment.” Cayuga Indian Nation v. Cuomo, 1999 U.S. Dist. LEXIS 10579, at *58 (N.D.N.Y. July 1, 1999) (“Cayuga X”). Following the reasoning in United States v. Imperial Irrigation District, 799 F.Supp. 1052 (S.D.Cal.1992), the District Court treated the ejectment remedy as a request for a permanent injunction. The court considered the factors iterated by the Restatement (Second) of Torts for application to requests for injunctions against trespass. Cayuga X, 1999 U.S. Dist. LEXIS 10579, at *62-63. The District Court did so because, as noted in Imperial Irrigation, “an equitable analysis is appropriate before issuing any final orders other than for monetary damages.” 799 F.Supp. at 1068 (quoted in Cayuga X 1999 U.S. Dist. LEXIS 10579, at *62) (emphasis added).
After considering the interest to be protected, the relative adequacy of various remedies, delay, misconduct, and relative hardship, the interests of third parties, and the practicability of an injunction, see Restatement (Second) of Torts § 936(1)(a)-(g), the District Court granted the defendants’ motion to preclude ejectment as a remedy.[3] Cayuga X, 1999 U.S. Dist. LEXIS 10579, at *99. The court then dismissed those defendants against whom the plaintiffs had sought ejectment and no other remedies. Id. Those defendants against whom the plaintiffs had sought other remedies remained in the case. While the majority states that the District Court “monetized” the remedy, Maj. Op. at 275, as I understand the term, it is only partially correct.[4] Instead, it rejected an ejectment remedy based on equitable considerations, including the remedial adequacy of money damages, and allowed the plaintiffs to pursue other remedies.[5]
II. Application of Laches to the Plaintiffs’ Claims for Damages
The issue before this court — -“the application of a nonstatutory time limitation in *283 an action for damages” — has not been addressed by the Supreme Court. See City of Sherrill, 125 S.Ct at 1494 n. 14 (citing Oneida II, 470 U.S. at 244, 105 S.Ct. 1245[6] ). To extend this defense to the Tribe’s claim for money damages would be “novel indeed.” Oneida II, 470 U.S. at 244 n. 16, 105 S.Ct. 1245. The majority argues that, “[o]ne of the few incontestable propositions about this unusually complex and confusing area of law is that doctrines and categorizations applicable in other areas do not translate neatly to these claims.”[7] Maj. Op. at 276. Such complexity is best addressed by relying on relevant precedent and established principles. Congressional action and centuries of precedent with regard to both Indian land claims and foundational distinctions between rights and remedies, coercive relief and damages, and legal claims and equitable relief, should guide the attempt to resolve this historic dispute.
The plaintiffs here seek relief under two theories, ejectment and trespass. As noted, all claims were brought prior to expiration of the relevant statute of limitations. Historically, both ejectment and trespass are actions at law. Dan B. Dobbs, Law of Remedies §§ 5.1, 5.10(1) (2d ed.1993). Unless a party’s delay amounts to either an estoppel or waiver, it does not bar a party’s access to remedies at law. Id. at § 2.4(4) (“When laches does not amount to estoppel or waiver, it does not ordinarily bar legal claims, only equitable remedies.”). Furthermore, laches is not a com-píete defense to a claim. “Because laches is based on prejudice to the defendant, the bar it raises should be no broader than the prejudice shown.” Id.
A. Ejectment and Laches
An action for ejectment generally seeks two remedies, restoration of possession and damages equivalent to the fair market rent for the period the plaintiff was wrongfully out of possession, sometimes referred to as mesne profits. Id. at § 5.10(1). Reinstatement of one’s possessory interest in land is typically the most salient of the two remedies. It is hardly surprising, therefore, that some jurisdictions have chosen to make the doctrine of laches available to defendants in ejectment actions where a coercive remedy is sought. See Maj. Op. at 275-76 n. 5. New York courts have held, for example, that “[a]n equitable defense is good in ejectment.” Dixey v. Dixey, 196 A.D. 352, 354, 187 N.Y.S. 879 (2d Dep’t 1921) (citing Phillips v. Gorham, 17 N.Y. 270 (1858)).
The defense of laches pertains only to the remedy sought, not the cause of action itself. The elements of laches are both delay and prejudice. City of Sherrill, 125 S.Ct. at 1491 (“laches, a doctrine focused on one side’s inaction and the other’s legitimate reliance, may bar long-dormant claims for equitable relief’); Kansas v. Colorado, 514 U.S. 673, 687, 115 S.Ct. 1733, 131 L.Ed.2d 759 (1995) (“The defense of laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the *284 party asserting the defense.” (internal quotations omitted)); Penn Mut. Life Ins. Co. v. City of Austin, 168 U.S. 685, 698, 18 S.Ct. 223, 42 L.Ed. 626 (1898) (“The reason upon which the rule [of laches] is based is not alone the lapse of time during which the neglect to enforce the right has existed, but the changes of condition which may have arisen during the period in which there has been neglect.”); see also Fred F. Lawrence, A Treatise on the Substantive Law of Equity Jurisprudence, § 1037 (1929) (“Being, like all other equitable relief, purely protective, it is not to be inferred from delay alone, but rather from the consequences which may under the circumstances flow from it.”). The nature of the remedy sought will necessarily change the court’s analysis of the effect of delay. “[E]quity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked.” Abraham v. Ordway, 158 U.S. 416, 420, 15 S.Ct. 894, 39 L.Ed. 1036 (1895) (emphasis added). “[L]aehes is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced.” Galliher v. Cadwell, 145 U.S. 368, 373, 12 S.Ct. 873, 36 L.Ed. 738 (1892). Thus, the application of the equitable defense of laches is, by its nature and function, confined by the particular prejudice caused by the remedy.
However, where a plaintiff seeks ejectment damages, rather than restoration of a possession interest, application of the doctrine of laches to such a money damage claim is rarely if ever justified. Even where reinstatement of possession is disruptive, attendant damage claims are not similarly disruptive. It is axiomatic that a menu of remedies, some mutually exclusive, may be associated with the same right and that, in different factual situations, different remedies will be appropriate. Here, the plaintiffs’ claims for possession and for fair rental value damages should be treated separately. While the element of delay found in connection with application of the defense to the possession remedy is equally present with regard to the money damages remedy, there is no corresponding prejudice to the defendant New York State (“State”) in connection with an award of money damages. The bar of laches does not rise high enough to bar the money judgment here. See Dobbs, supra, § 2.4(4).
Determining that the coercive remedy of restoration of possession is barred by lach-es requires a fact-intensive inquiry regarding the disruptiveness of that remedy. In City of Sherrill, for example, the Court found that the defendants in that ease had “justifiable expectations” which were “grounded in two centuries of New York’s exercise of regulatory jurisdiction.” 125 S.Ct. at 1490-91. The Supreme Court held that the remedy sought by the Oneida Indian Nation — the reassertion of sovereignty resulting in “a checkerboard of state and tribal jurisdiction” — was disruptive to justifiable expectations regarding the state, and therefore local, regulatory authority over territory. Id. at 1482. The City of Sherrill Court concluded, in the face of two hundred years of sovereign control by the State of New York and its municipalities, that the reassertion of tribal sovereignty would be “disruptive.” Id. at 1491.
City of Sherrill would thus support a finding that restoration of possession, following two hundred years of unlawful possession, is a sufficiently disruptive remedy that it may satisfy the prejudice element of the laches defense. However, the proof involved with the remedy of damages will be radically different than that involved with a claim for an injunction, specific *285 performance, or equitable re-possession in real property. Indeed, there does not appear to be anything in the money damages award in this case that would be disruptive.
The majority concludes that the plaintiffs’ “possessory land claims” are barred in their entirety by City of Sherrill and reasons that the plaintiffs, having been denied the right to possession, cannot prove the elements of their claims for money damages. However, current possession is not an element of a legal claim for ejectment. A legal claim for ejectment consists of the following elements: “[pjlaintiffs are out of possession; the defendants are in possession, allegedly wrongfully; and the plaintiffs claim damages because of the allegedly wrongful possession.” Oneida Indian Nation of N.Y. v. County of Oneida, N.Y., 414 U.S. 661, 683, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (“Oneida I”) (citing Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). Making out this claim cannot depend on the plaintiffs’ ability to obtain the right to future possession, whether legal or constructive, as such requirement would make the claim circular. Instead, the only necessary element in this regard is that the plaintiffs are wrongfully out of possession, which element the District Court here found. Cayuga III, 730 F.Supp. at 493. The inability to obtain the coercive remedy of possession, as a result of the court’s exercise of discretion in the same case, should not bar an ejectment claim for money damages.
B. Trespass
While the, majority does not appear to apply the laches defense to a claim for trespass damages, it nevertheless dismisses the plaintiffs’ trespass claim on the basis that it is derivative of the ejectment claim and requires proof of possession. The fact that “possession” is an element of a claim for trespass does not require dismissal of the action, however. The trespass claim is not predicated upon the plaintiffs’ possessory claim, nor is there any relationship between the two claims that necessitates dismissal of the trespass claim. Indeed, the plaintiffs may be able to prove the right to possession[8] while being unable to obtain a coercive remedy that would restore them in the future to physical possession.
The majority’s contention that the plaintiffs cannot make out,their claim for damages because their claim for coercive relief fails treats the special defense of laches , as if it were in the nature of a statute of repose. However, nowhere in City of Sherrill is the “right” of possession addressed; the Court writes always about the “remedy” of possession. See, e.g., City of Sherrill, 125 S.Ct. at 1489. Courts , have discretion to apply laches to deny a party some or all remedies. See supra at 283-84. However, the defense of laches does not apply to prevent a party from establishing an element of its cause of action. See Felix v. Patrick, 145 U.S. 317, 325, 12 S.Ct. 862, 36 L.Ed. 719 (1892) (discussed in City of Sherrill, 125 S.Ct. at 1491-92). Perhaps if laches were a doctrine akin to a statute of repose, such that, first, it applied to a legal claim and, second, it vitiated the claim, the majority’s analysis that claims involving the right to possess are barred by laches because laches bars the remedy of possession might be persuasive. See generally P. Stolz Family P’ship v. Daum, 355 F.3d 92, 102 (2d Cir.2004) (discussing difference between statutes of repose, which define and limit rights, and statutes of limitations, which “bear on available *286 remedies”). Nothing in the ease law concerning laches, however, supports such an analysis.
C. United States as Plaintiff
The United States is a plaintiff in this case. “The principle that the United States are not ... barred by any laches of their officers, however gross, in a suit brought by them as a sovereign Government to enforce a public right, or to assert a public interest, is established past all controversy or doubt.” United States v. Beebe, 127 U.S. 338, 344, 8 S.Ct. 1083, 32 L.Ed. 121 (1888) (quoted in Alaska Dep’t of Envtl. Conservation v. EPA., 540 U.S. 461, 514, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) (Kennedy, J., dissenting)); see also United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). In the instant case, the United States pursues a right created by a federal statute and proceeds in its sovereign capacity and, as such, is not subject to a laches defense. Summerlin, 310 U.S. at 417, 60 S.Ct. 1019; c.f., United States v. California, 507 U.S. 746, 757-58, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993). That the United States acts both on its own behalf as well as that of the Cayugas does not affect this principle for “it is also settled that state statutes of limitation neither bind nor have any application to the United States, when suing to enforce a public right or to protect interests of its Indian wards.” United States v. Minnesota, 270 U.S. 181, 196, 46 S.Ct. 298, 70 L.Ed. 539 (1926); see also Nevada v. United States, 463 U.S. 110, 141-42, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); Board of County Comm’rs of Jackson County v. United States, 308 U.S. 343, 350-51, 60 S.Ct. 285, 84 L.Ed. 313 (1939).
The majority explains its application of the defense of laches to claims asserted by the United States by suggesting that the doctrine that the United States is not subject to the defense of laches “does not seem to be a per se ” rule. See Maj. Op. at 278. For this point, it relies upon Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). However, that case is distinguishable from the instant one in two important respects, both of which exclude this case from the limited holding reached in Clearfield Trust.
First, the Court in Clearfield Trust limited its application of non-statutory time bars to those claims brought by the United States that were not subject to any statutory time bar. Id. at 367, 63 S.Ct. 573 (“In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards.”). The claims in this case are subject to a statutory time bar. See 28 U.S.C. § 2415; see also supra at 280-81. As Congress has already defined the applicable time bar, Clearfield Trust supports the conclusion that this court should not reach the question of whether it ought to fashion a time-bar, whether from state law or federal common law. See id. at 367, 63 S.Ct. 573; see also Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO, 451 U.S. 77, 95, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (“the federal lawmaking power is vested in the legislative, not the judicial, branch of government; therefore federal common law is ‘subject to the paramount authority of Congress.”) New Jersey v. New York, 283 U.S. 336, 348, 51 S.Ct. 478, 75 L.Ed. 1104 (1931)”; Westnau Land Corp. v. United States Small Bus. Admin., 1 F.3d 112, 117 (2d Cir.1993) (“[T]he acknowledged federal interest in the ‘rights of the United States arising under nationwide federal programs,’ United States v. Kimbell Foods, Inc., 440 U.S. 715, 726, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), should be determined by application of the statutory rule provided by Congress.”).
*287 Second, the Clearfield Trust Court limited the application of laches to those claims deriving not from the sovereign authority and rights of the United States but, instead, relating to the actions of the United States with respect to business and commerce. Clearfield Trust, 318 U.S. at 369, 63 S.Ct. 573 (“The United States as draw-ee of commercial paper stands in no different light than any other drawee.”); see also Franconia Assocs. v. United States, 536 U.S. 129, 141, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) (citing Clearfield Trust for the proposition that “[o]nce the United States waives its immunity and does business with its citizens, it does so much as a party never cloaked with imrnunity.”); Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604, 607, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000) (“When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.” (internal quotation marks omitted)). In the instant case, the United States is not a commercial actor. Here, it acts both “to enforce a public right [and] to protect interests of its Indian wards.” United States v. Minnesota, 270 U.S. at 196, 46 S.Ct. 298. It is clear, then, that the United States’s claims in this case, both on its own behalf and as trustee to the Tribe, are not barred by laches.
After relying on Clearfield Trust to open the door for application of laches to claims by the United States, the majority then finds that the defense is appropriate in the instant case. In doing so, it relies on a Seventh Circuit case for the proposition that three Supreme Court cases support the application of laches in cases such as this one. United States v. Admin. Enters., Inc., 46 F.3d 670, 673 (7th Cir.1995) (citing Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 373, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 60-61, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).
However, neither Administrative Enterprises, nor the cases cited therein, support the application of laches to the United States in the instant case. Of the three cases cited by Administrative Enterprises, only one specifically addresses the applicability of a delay-based defense like laches in a suit brought by the United States.[9] Occidental Life, 432 U.S. at 373, 97 S.Ct. 2447. The Occidental Life Court declined to allow delay to bar a claim by the United States. Id. To the extent that it “refuse[d] to shut the door completely to the invocation of laches or estoppelj” Administrative Enterprises, Inc., 46 F.3d at 673, it did so, in dicta, only where a “private plaintiffs unexcused conduct of a particular case” made limitations on relief, specifically backpay, appropriate. Occidental Life, 432 U.S. at 373, 97 S.Ct. 2447. Occidental Life, thus, differentiates between claims and remedies, and unexcused delay by private plaintiffs and the United States. Id. It does not support application of laches here, where the majority applies the de *288 fense to bar the claim itself, rather than a specific remedy for the claim.[10]
These cases cannot support the proposition that this Court has the authority to craft a federal common law defense of laches against an Indian land claim sought by the United States. Indeed, Administrative Enterprises “three main possibilities for when laches might apply against the United States,” Maj. Op. at 279, are not present in this case. With regard to Administrative Enterprises ’ first “possibility,” egregious delay, while two hundred years is surely a significant length of time, the majority fails to consider the nature of that delay and to what extent it may be excused. With regard to Administrative Enterprises ’ second “possibility,” the absence of an applicable statute of limitations, here Congress did enact a statute of limitations applicable to the plaintiffs’ claims for damages. 28 U.S.C. § 2415(a).[11] With regard to Administrative Enterprises ’ third “possibility,” situations where the United States pursues a “private” interest, the Supreme Court has found that, insofar as it acts on behalf of Indian tribes, the United States acts to protect a public interest, entirely dissimilar from the private interest served where the United States pursues an action based on its purely commercial endeavors. See United States v. Minnesota, 270 U.S. 181, 196, 46 S.Ct. 298, 70 L.Ed. 539 (1926) (describing United States’ role in serving public interest by protecting “interests of its Indian wards.”). Indeed, it is in its role as a sovereign that the United States participates in this case. Id. at 194, 46 S.Ct. 298 (United States’ interest in suit in which it represents Indians’ interests as trustee is based in its own sovereignty.). Thus, even if Administrative Enterprises were persuasive precedent, this case presents none of its suggested possible situations justifying use of laches against the United States..
III. The Import of City of Sherrill
The majority sees “no reason why the equitable principles identified by the Supreme Court in City of Sherrill should not apply to this case, whether or not it could be technically classified as an action at law.” Maj. Op. at 276. However, the clear language of City of Sherrill confines its holding to the use of laches to bar certain relief, not to bar a claim or all remedies:
“The question whether equitable consideration should limit the relief available to the present day Oneida Indians .... ” City of Sherrill, 125 S.Ct. at 1487 (quoting Oneida II, 470 U.S. at 253, n. 27, 105 S.Ct. 1245) (emphasis added).
“In contrast to Oneida I and II, which involved demands for monetary compensation, OIN sought equitable relief prohibiting, currently and in the future, the imposition of property taxes.” Id. at 1488 (emphasis added).
*289 “When the Oneidas came before this Court 20 years ago in Oneida II, they sought money damages only. The court reserved for another day the question whether ‘equitable considerations’ should limit the relief available to the present-day Oneidas.” Id. at 1489 (internal citations omitted) (emphasis added).
“The principle that the passage of time can preclude relief has deep roots in our law.... It is well-established that lach-es, a doctrine focused on one side’s inaction and the other’s legitimate reliance, may bar long-dormant claims for equitable relief” Id. at 1491 (emphasis added).
“... the Oneida’s long delay in seeking equitable relief ... evokes the doctrine[ ] of laches ...” Id. at 1494.
The City of Sherrill opinion is not support for the application of the equitable defense of laches as a bar to money damages in this case.[12]
The City of Sherrill Court’s analysis, which underpins its holding, is framed by the nature of the equitable remedy that the Oneida Indian Nation sought there. See 125 S.Ct at 1488 (“OIN sought equitable relief’); id. at 1489 (“OIN seeks declaratory and injunctive relief’); id. at 1491 (“This long lapse of time, during which the Oneidas did not seek to revive their sovereign control through equitable relief in court, and [evidence of prejudice] ... preclude OIN from gaining the disruptive remedy it now seeks.”); id. at 1494 (“long delay in seeking equitable relief’); id. at 1494 n. 14 (“specific relief’). This language makes clear that the City of Sherrill Court addresses laches in the context of the specific equitable relief sought in that case. Further, it repeatedly notes the difference between a right and a remedy. As the City of Sherrill Court notes, the question of right is “very different” from the question of remedy. Id. at 1489 (quoting Dan B. Dobbs, Law of Remedies § 1.2 (1st ed.1973)). The City of Sherrill Court also quotes with approval a Tenth Circuit case for the principle that “the distinction between a claim or substantive right and a remedy is fundamental.” Id. at 1489 (quoting Navajo Tribe of Indians v. New Mexico, 809 F.2d 1455, 1467 (10th Cir.1987). As if to emphasize this point, and its importance to the opinion, the City of Sherrill Court also quotes, with approval, the district court in Oneida Indian Nation of New York v. County of Oneida on this distinction between right and remedy. “[There is a] ‘sharp distinction between the existence of a federal common law right to Indian homelands,’ a right this Court recognized in Oneida II, ‘and how to vindicate that right.’ ” City of Sherrill, 125 S.Ct. at 1488 (quoting Oneida Indian Nation of N.Y. v. County of Oneida, 199 F.R.D. 61, 90 (N.D.N.Y.2000) (emphasis in original).
Further, the Supreme Court in City of Sherrill addresses at length an Indian land claim case, Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719 (1892). 125 S.Ct. at 1491-92. While the Felix Court applied laches to bar the equitable remedy of a constructive trust over land conveyed by the plaintiffs Indian ancestor in violation of a statutory restriction, the Court noted, in dicta, that a money damages award would be appropriate. Felix, 145 U.S. at 334, 12 S.Ct. 862. While the law demanded a measure of money damages, the delay and prejudice due to changed circumstances over thirty years supported the application of the doctrine of laches to *290 the equitable remedy of constructive trust. Id. at 333-34, 12 S.Ct. 862; see City of Sherrill, 125 S.Ct. at 1491-92.
Finally, the City of Sherrill Court expressly noted that, “the question of damages for the Tribe’s ancient dispossession is not at issue in this case, and we therefore do not disturb our holding in Oneida II” 125 S.Ct. at 1494. While this statement is not dispositive of whether laches would apply here to bar a money damage award, the Court in City of Sherrill did reiterate its observation in Oneida II that “application of a nonstatutory time limitation in an action for damages would be ‘novel.’ ” Id. at 1494 n. 14. (quoting Oneida II, 470 U.S. at 244, 105 S.Ct. 1245). In contrast, it noted that “no similar novelty exists when the specific relief OIN now seeks would project redress for the Tribe into the present and future.” Id. (emphasis added). In light of the clear language and the analysis in City of Sherrill, the conclusion that City of Sherrill limits the application of the equitable defense of laches to the award of forward-looking, disruptive equitable relief is compelling.[13]
Further, even assuming laches could apply to the money damages award in this case, there is nothing in the record before us to support a finding of the disruptive nature of the monetary award. The City of Sherrill decision certainly supports affirming the District Court’s denial of repossession as an equitable remedy, based on the District Court’s findings that the equitable considerations involved in the case did not permit it. See Cayuga X, 1999 U.S. Dist. LEXIS 10579, at *74-*99.[14] However, there is no basis to support such a finding on the prejudice element with regard to the award of money damages as a remedy in this case.
IV. Conclusion
While City of Sherrill may have “dramatically altered the legal landscape” of Indian land claims, Maj. Op. at 273, it does not reach as far as the majority reads it. City of Sherrill holds that laches can bar a tribe from obtaining the disruptive remedy of re-assertion of tribal sovereignty. Furthermore, the case supports the proposition that the nature of forward-looking, disruptive remedies generally will serve as equitable considerations that can bar such equitable remedies as re-possession, even against the United States. An award of money damages is not an equitable remedy, nor is it forward-looking or disruptive in the way dispossession inherently is. Nothing in City of Sherrill suggests a total bar on the ability of Indian tribes to obtain damages for past wrongs where Congress has explicitly provided for it.
City of Sherrill serves as strong support to affirm the District Court’s refusal to award possession to the plaintiffs, and I join in the judgment to that extent. How *291 ever, I respectfully dissent from that part of the majority opinion which dismisses the Tribe’s claim for money damages. While there remain issues as to the nature or amount of the money damages awarded, I cannot join the majority in reading City of Sherrill to bar all remedies.
While I do not join entirely in the majority’s resolution of this case, I wholeheartedly concur in its comments concerning Judge McCurn’s tireless and thoughtful attention to this complex and challenging case for over two decades.

. "Cayuga plaintiffs” refers collectively to the Cayuga Indian National and the Seneca-Cayuga Tribe.

. Notably, at that time, the defendants did not raise the defense of laches, an equitable defense, to any of the plaintiffs' non-equitable claims. Cayuga I, 565 F.Supp. at 1310 (discussing application of delay-based defenses to availability of equitable remedies of rescission and restitution).

. Thus, contrary to the majority’s assertion, the District Court did not find “that laches barred the possessory claim,” Maj. Op. at 277, but rather concluded that equitable considerations prevented the award of the equitable remedy of possession.

. Fair rental value damages, as a monetary remedy, had been sought since the filing of the case.

. The power of a court sitting in equity to award monetary relief as, or in place of, an equitable remedy has long been recognized. Cathcart v. Robinson, 30 U.S. 264, 278, 5 Pet. 264, 8 L.Ed. 120 (1831) (Marshall, C.J.); see also Mora v. United States, 955 F.2d 156, 159-160 (2d Cir.1992).

. Although the Oneida II majority did not reach the question, it did observe that "it is far from clear that this [laches] defense is available in suits such as this one [for money damages], ...." Oneida II, 470 U.S. at 244, 105 S.Ct. 1245. The Court further noted that "application of the equitable defense of laches in an action at law would be novel indeed.” Id. at 244 n. 16, 105 S.Ct. 1245.

. The cases cited by the majority in support of this point, to the extent that they suggest that Indian land claims are to be treated different from non-Indian claims, strongly suggest that Indian claims are entitled to more protection, rather than less, as a result of strong federal policy protecting tribal title from application of state law. See Oneida II, 470 U.S. at 240-44, 105 S.Ct. 1245; Mohegan Tribe v. Connecticut, 638 F.2d 612, 614-15 (2d Cir.1980).

. There are issues on appeal concerning the rulings by the District Court that the plaintiffs have a right to possession because the land transfers were illegal.

. Heckler concerns estoppel, not laches, but does confirm as "well settled” precedent that "the Government may not be estopped on the same terms as any other litigant.” 467 U.S. at 60, 104 S.Ct. 2218. Irwin addresses equitable tolling and concludes that the statute of limitations on a private party’s claim against the United Statutes may be equitably tolled where the statutory waiver of sovereign immunity allowing for the private right action also makes the rule of equitable tolling applicable to the United States. 498 U.S. at 95-96, 111 S.Ct. 453. Notably, the Court commented that "Congress, of course, may provide otherwise if it wishes to do so.” Id. at 96, 111 S.Ct. 453.

. Another case, NLRB v. P*I*E Nationwide, Inc., is relied on by the majority for the proposition that “laches is generally and we think correctly assumed to be applicable to suits by government agencies Maj. Op. at 278 (quoting 894 F.2d 887, 894 (7th Cir.1990)). That case, however, limits the court's equitable discretion to areas where neither Congress nor a federal agency has made a “value choice” contrary to the exercise of equitable discretion of the court. P*I*E Nationwide, Inc., 894 F.2d at 894 (“[W]e do not mean to suggest that the court is entitled to substitute its conception ... for that of Congress ... ”). Congress has spoken on the issue of time bars to Indian land claims. While distinguishing between remedies may be appropriate, barring those claims entirely ignores the controlling statute.

. That § 2415(a) applies only to actions for money damages supports the conclusion that laches cannot be applied to bar a claim for money damages, but may be applied to bar a claim for equitable relief.

. It is also telling that Justice Stevens noted in dissent that the majority ”relie[d] heavily on the fact that the Tribe is seeking equitable relief in the form of an injunction.” Id. at 1496 (Stevens, J., dissenting) (emphasis in the original and added).

. The contention that a damages award for either past fair rental value or present fair market value would "project redress into the present and future,” Maj. Op. at 275, in order to bring that award within the scope of the City of Sherrill holding vitiates any reasonable meaning the Supreme Court could have intended that phrase to have.

. The District Court did not conclude, as the majority suggests, that the "doctrine of laches bars the possessory land claim presented by the Cayugas here.” Maj. Op. at 277. Indeed, the District Court concluded, on then-existing precedent, that laches did not bar the plaintiff's claims, Cayuga I, 565 F.Supp. at 1310, but it later concluded that equitable considerations did prevent the award of the equitable remedy of possession. Cayuga X, 1999 U.S. Dist. LEXIS 10579, at *98. Properly distinguishing between claims and remedies, the District Court concluded that, "in the context of determining whether ejectment is an appropriate remedy, the delay factor tips decidedly in favor of the defendants.” Id. at *86.